WHITE v TAYLOR DISTRIBUTING COMPANY, INC

Docket No. 272114. Submitted March 7, 2007, at Detroit. Decided May 24, 2007, at 9:00 a.m.

Sherita and Derrick White brought a negligence action in the Oakland Circuit Court against James Birkenheuer, Taylor Distributing Company, Inc., and Penske Truck Leasing Company, L.P., after a tractor-trailer Birkenheuer was driving struck a van Sherita White was driving when Birkenheuer allegedly passed out following a severe gastrointestinal disturbance. The trial court, Deborah G. Tyner, J., granted the defendants' motion for summary disposition on the basis of the sudden-emergency doctrine, and the plaintiffs appealed.

The Court of Appeals *held*:

The trial court erred in granting summary disposition, despite the fact that the plaintiffs failed to submit sufficient documentary evidence in response to the motion, because the determination whether Birkenheuer was negligent or experienced a sudden emergency necessarily depended on Birkenheuer's own account of the events preceding the accident, which could not have been rebutted by any documentary evidence and which required the finder of fact to assess Birkenheuer's credibility.

Reversed.

KELLY, J., dissenting, would affirm because the plaintiff's failure to submit any evidence to create a genuine issue of material fact requires summary disposition pursuant to MCR 2.116(C)(10), and further states that the majority inappropriately made a factual finding by concluding that Birkenheuer's undisputed testimony lacked credibility.

MOTIONS AND ORDERS — SUMMARY DISPOSITION — CREDIBILITY DETERMINATIONS.

In cases in which an issue regarding a material fact cannot be resolved without observing a witness's demeanor to determine his or her credibility, summary disposition is not appropriate even if the adverse party failed to submit sufficient documentary evidence to counter the motion (MCR 2.116[C][10]; MCR 2.116[G][4]).

*Mark Granzotto, P.C.* (by *Mark Granzotto*), and
*Gursten, Koltonow, Gursten, Christensen & Raitt, P.C.*
(by *Steven M. Gursten*), for the plaintiffs.

*Kopka, Pinkus, Dolin & Eads, P.L.C.* (by *John T.
Eads, III* and *John M. Callahan*), for the defendants.

Before: MARKEY, P.J., and MURPHY and KELLY, JJ.

MURPHY, J. Plaintiffs appeal as of right the trial
court's order granting defendants' motion for summary
disposition under MCR 2.116(C)(10) on the basis of the
sudden-emergency doctrine. This is a negligence action
arising from a motor vehicle accident in which a van
driven by plaintiff Sherita White (White) was struck
from behind by a tractor-trailer operated by defendant
James Birkenheuer after Birkenheuer allegedly blacked
out. We reverse, concluding that crucial credibility
issues, relative to whether Birkenheuer was negligent
and truly faced a sudden emergency, require adjudica-
tion by the trier of fact at trial, thereby making entry of
the summary disposition order "inappropriate" under
MCR 2.116(G)(4). Consistent with MCR 2.116(G)(4), we
reach this conclusion regardless of plaintiffs' failure to
submit sufficient documentary evidence to counter
Birkenheuer's version of events, which was primarily
within his exclusive knowledge.

I. DOCUMENTARY EVIDENCE PRESENTED
AT SUMMARY DISPOSITION

On March 15, 2004, White was stopped in her van at
the intersection of I-96 and Novi Road in Novi, Michi-
gan, when Birkenheuer, who was driving a tractor-
trailer owned by defendant Penske Truck Leasing Com-
pany, L.P., in the course of his employment with
defendant Taylor Distributing Company, Inc., collided

with the rear of White's vehicle, allegedly causing serious injury. Birkenheuer testified at his deposition that on the day of the accident he was driving from Cincinnati to Novi. He indicated that while he was on I-275 he stopped at a rest area around Canton, Michigan, because he suddenly had to use the restroom "big time" to have a bowel movement. Birkenheuer stated that after experiencing an episode of severe diarrhea he stayed in the rest area for a while, walked around the area to make sure he was finished using the restroom, and then left because he felt fine and his destination was not far away. He estimated that he was at the rest area for "maybe 20 minutes." According to Birkenheuer, he had never previously been treated for gastrointestinal issues.

Birkenheuer proceeded traveling and subsequently, when driving on westbound I-96, he drove his truck onto the exit ramp for the Novi Road exit. Ten to fifteen seconds after getting on that ramp he "just broke out into a sweat and got dizzy." Birkenheuer indicated that the very next thing he did when he felt the sudden sweating and dizziness was to "[h]it the brakes." He did not slam the brakes, but he did "[m]ore than a normal stop" because he wanted to stop quickly. Birkenheuer asserted that he had slowed the truck down to between 5 and 10 miles an hour just before he blacked out. When asked why he hit his brakes, Birkenheuer stated, "Because I was dizzy and I told myself—you know, I'm stopping. I don't care if I'm in the middle of this thing and sit here, I'm stopping." He did not apply the emergency brake, nor did he consider driving the truck onto the shoulder. Birkenheuer saw White's van "way up there," at least 250 to 300 yards ahead, at the point where he started to sweat and become dizzy. He remembered applying the brakes with plenty of room to stop before blacking out. He regained consciousness soon

afterward by the jarring of his truck as it hit White's van. Birkenheuer indicated that he had no recall between the point of applying the brakes and the collision.

Birkenheuer described his actions after the collision as follows:

> [I] [s]et the brake and hit the flashers, and I wanted to get out and see if [White] was all right. I got out of the car, walked to the front of the truck and passed out again in the street. And the next thing I remember is trying to get up again, and some guys that were already there . . . said just stay where you are, so I never saw her.

Birkenheuer also expressed that after he passed out again on the pavement in front of his truck, he involuntarily urinated and defecated; he had more diarrhea. He claimed that he had never felt dizzy while driving other than during the incident involved in this case and as described above.

Birkenheuer was treated in the local hospital's emergency room (ER) and left against medical advice after a few hours. The medical diagnosis by the ER physician regarding what had occurred to Birkenheuer around the time of the accident was "acute syncopal episode." The ER physician testified that a "syncopal episode" means, in layman's terms, that Birkenheuer "passed out." The ER physician indicated that there were numerous possible causes for a syncopal episode. She further stated that severe bouts of diarrhea could cause dehydration, which in turn could result in a syncopal episode. The ER physician opined, however, that one episode of diarrhea typically would not cause one to pass out, but severe abdominal cramps and pain could cause a syncopal episode. The day after the accident, Birkenheuer saw another physician who diagnosed "viral enteritis with syncopal spell secondary to hypovolemia from diarrhea." This suggested a

connection between the severe bout of diarrhea suffered by Birkenheuer and his passing out.

Defendants moved for summary disposition under MCR 2.116(C)(10) on the grounds that Birkenheuer was not negligent with regard to the accident under the sudden-emergency doctrine because the accident resulted from an unexpected medical emergency not of his making and, alternatively, that White did not suffer a serious impairment of body function as a result of the accident. Thereafter, defendants additionally contended that they were entitled to summary disposition under MCR 2.116(C)(7) on the basis of a release that White had signed in connection with her claim for first-party, no-fault benefits with an insurer who is not a party to this action.

The trial court granted summary disposition in favor of defendants on the basis of the sudden-emergency doctrine without addressing the serious impairment of body function or release issues.[1] The trial court essentially accepted Birkenheuer's version of events, which necessarily reflected a conclusion that he was credible. Plaintiffs appeal as of right.

II. ANALYSIS

A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Kreiner v Fischer*,

---

[1] The trial court ruled:

The evidence establishes that Mr. Birkenheuer passed out while driving his semi truck. He had no prior similar episodes, had no pain or any other symptom just before the accident. He attempted to stop as soon as he began feeling dizzy and light-headed. The court finds the collision occurred as the result of a sudden emergency not of the defendants' own making.

471 Mich 109, 129; 683 NW2d 611 (2004).[2] We similarly review de novo the interpretation of statutes and court rules. *Associated Builders & Contractors v Dep't of Consumer & Industry Services Director*, 472 Mich 117, 123-124; 693 NW2d 374 (2005).

### B. REAR-END COLLISIONS AND THE STATUTORY REBUTTABLE PRESUMPTION

MCL 257.402(a) provides:

> In any action, in any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain

---

[2] Summary disposition was granted pursuant to MCR 2.116(C)(10). MCR 2.116(C)(10) provides for summary disposition where there is no genuine issue regarding any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); MCR 2.116(G)(5). Initially, the moving party has the burden of supporting its position with documentary evidence, and, if so supported, the burden then shifts to the opposing party to establish the existence of a genuine issue of disputed fact. *Quinto, supra* at 362; see also MCR 2.116(G)(3) and (4). "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in [the] pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Quinto, supra* at 362. Generally speaking, where the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *Id.* at 363. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Courts are liberal in finding genuine issues of material fact. *Lash v Allstate Ins Co*, 210 Mich App 98, 101; 532 NW2d 869 (1995). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator.

"Under the rear-end collision statute a rebuttable presumption arises that the offending driver is *prima facie* guilty of negligence." *Vander Laan v Miedema*, 385 Mich 226, 231; 188 NW2d 564 (1971), citing *Petrosky v Dziurman*, 367 Mich 539, 543; 116 NW2d 748 (1962), and *Garrigan v LaSalle Coca-Cola Bottling Co*, 362 Mich 262, 263; 106 NW2d 807 (1961); see also *Szymborski v Slatina*, 386 Mich 339, 340; 192 NW2d 213 (1971).[3] Accordingly, because Birkenheuer's truck undisputedly struck the rear of White's vehicle, a rebuttable presumption arose that he was negligent with regard to the collision. A presumption of negligence "may be rebutted with a showing of an adequate excuse or justification under the circumstances[.]" *Dep't of Transportation v Christensen*, 229 Mich App 417, 420; 581 NW2d 807 (1998). When the trial court undertakes to eliminate from the jury's consideration a statutory presumption as a matter of law, at the very least there must be clear, positive, and credible evidence opposing the presumption. *Petrosky, supra* at 544; see also *Szymborski, supra* at 341 (where evidence is less than clear,

---

[3] Plaintiffs also maintain that Birkenheuer violated MCL 257.627(1), which provides in part that "[a] person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead," and that this also created a rebuttable presumption of negligence. But given the direct and unambiguous applicability of MCL 257.402(a) to create a rebuttable presumption, we see no reason to consider whether MCL 257.627(1) would independently create such a presumption.

positive, and credible, the issue of overcoming the rear-end presumption should be settled in the jury room).

### C. THE SUDDEN-EMERGENCY DOCTRINE

The sudden-emergency doctrine was explained by our Supreme Court in *Socony Vacuum Oil Co v Marvin*, 313 Mich 528, 546; 21 NW2d 841 (1946):

> "One who suddenly finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence." [Quoting Huddy on Automobiles (8th ed), p 359.]

To come within the purview of the sudden-emergency doctrine, the circumstances surrounding the accident must present a situation that is unusual or unsuspected. *Vander Laan, supra* at 232, citing *Barringer v Arnold*, 358 Mich 594, 599; 101 NW2d 365 (1960). "[I]t is essential that the potential peril had not been in clear view for any significant length of time[.]" *Vander Laan, supra* at 232. *Szymborski* addressed the sudden-emergency doctrine in the context of the rear-end presumption. The Court stated that the sudden-emergency doctrine is a logical extension of the "reasonably prudent person" standard, with the question being whether the defendant acted as a reasonably prudent person when facing the emergency, giving consideration to all the circumstances surrounding the accident. *Szymborski, supra* at 341; see also *Baker v Alt*, 374 Mich 492, 496; 132 NW2d 614 (1965) ("In actuality, the doctrine of 'sudden emergency' is nothing but a logical extension of the 'reasonably prudent person'

rule."); *Woiknoris v Woirol*, 70 Mich App 237, 240-241; 245 NW2d 579 (1976) ("A sudden emergency is simply one of the circumstances to be considered in determining whether an act or conduct was negligent."). Accordingly, when a person faces a sudden emergency, it does not create an invitation to act in a negligent manner; rather, due consideration is given to the circumstances involved. While a person confronted by a sudden emergency is not guilty of negligence if he or she fails to adopt what subsequently and upon reflection may appear to have been a better method, *Socony Vacuum*, *supra* at 546, this principle, given the cases cited above, necessarily comes into play when the person chooses one reasonable, non-negligent course of action over another reasonable, non-negligent course of action that would have resulted in a more favorable outcome when viewed in hindsight.

### D. DISCUSSION

In light of the statutory rebuttable presumption of negligence and because crucial credibility determinations relative to Birkenheuer's alleged negligence and the onset of a sudden emergency beg to be resolved, we conclude that this case needs to be heard and decided by a jury and should not have been decided by the court as a matter of law in the context of summary disposition. Vital to Birkenheuer's overcoming the rebuttable presumption that he was guilty of negligence in the rear-end collision is the establishment of his sudden-emergency claim that he blacked out shortly before the collision. Additionally, the point when Birkenheuer first experienced sweating, unsteadiness, and dizziness is vitally important in determining whether the accident was possibly brought about by Birkenheuer's own negligence and whether it occurred under circumstances

deemed unsuspected. If Birkenheuer was feeling somewhat unsteady, light-headed, or dizzy earlier than claimed, and possibly as far back as when he was at the rest area, a reasonable juror might find that he cannot seek shelter under the sudden-emergency doctrine because he created the hazard by deciding to drive or continuing to drive.

It is true that Birkenheuer testified that he first became dizzy and blacked out just before the accident while on the exit ramp and that he felt okay when he left the rest area; however, these claims are virtually impossible to contradict with any documentary evidence because they reflect personal physical sensations that Birkenheuer experienced alone in his truck. The case hinges on the credibility of Birkenheuer's assertions. Arguably, it could be inferred that Birkenheuer was experiencing some level of unsteadiness, light-headedness, or dizziness from the time that he was at the rest area on the basis of the medical evidence suggesting that such symptoms, along with the eventual syncopal episode, were caused by a virus and brought on by the bout of severe, voluminous diarrhea and cramping suffered at the rest area; he supposedly remained at the rest area a full 20 minutes[4] before proceeding and had another episode of diarrhea at the accident scene. However, we decline to rest our decision on this somewhat speculative proposition. Birkenheuer's credibility is crucial to this case in ascertaining negligence and the existence of a sudden emergency,

---

[4] The notes by the physician who treated Birkenheuer the day after the accident reflect that Birkenheuer claimed that he experienced a large volume of severe diarrhea at the rest area, which episode lasted five to six minutes, and that he then began driving again. There is no mention of waiting for 20 minutes at the rest area, which could call into question Birkenheuer's version of the events. Again, a jury needs to resolve this action.

and the trial court's ruling necessarily accepted Birken-heuer's account of events. But courts "may not resolve factual disputes or determine credibility in ruling on a summary disposition motion." *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004); see also *Foreman v Foreman*, 266 Mich App 132, 135-136; 701 NW2d 167 (2005). In *Vanguard Ins Co v Bolt*, 204 Mich App 271, 276; 514 NW2d 525 (1994), this Court stated:

> The granting of a motion for summary disposition is especially suspect where motive and intent are at issue or where a witness or deponent's credibility is crucial. Accordingly, where the truth of a material factual assertion of a moving party depends upon a deponent's credibility, there exists a genuine issue for the trier of fact and a motion for summary disposition should not be granted. [Citations omitted.]

Our Supreme Court in *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994), also recognized these principles, stating, "The court is not permitted to assess credibility, or to determine facts on a motion for summary judgment."

The potential problem with these well-established principles is that they do not appear to be dependent on conflicting documentary evidence that causes the creation of a factual issue or dispute, but rather simply on the existence of a credibility issue relative to a material factual assertion. At first glance, this would appear to run afoul of MCR 2.116(G)(4), which provides:

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial.

If the adverse party does not so respond, judgment, *if
appropriate*, shall be entered against him or her. [Emphasis
added.]

The emphasized language clearly and unambigu-
ously indicates that there may be situations in which
summary disposition is inappropriate even if the ad-
verse party fails to submit documentary evidence suffi-
cient to show a genuine issue of fact for trial when
responding to a properly supported C(10) motion.[5] The
case at bar presents such a situation, and reading the
court rule in this manner would be consistent with
those cases that indicate that the granting of a motion
for summary disposition is suspect and improper where
the credibility of a witness or deponent is crucial.
Defendants submitted documentary evidence showing
that Birkenheuer passed out just before the accident
and that he did not experience sweating, dizziness, or
unsteadiness until he reached the exit ramp. We note
that independent medical evidence did not pinpoint
when Birkenheuer blacked out or became sweaty and
dizzy, nor did the medical evidence establish that
Birkenheuer first passed out while operating his rig
rather than after the accident, while he was walking
near his truck.[6] In other words, defendants' attempt to

---

[5] The principles governing statutory interpretation apply equally to the
interpretation of the court rules. *Richards v Tibaldi*, 272 Mich App 522,
532; 726 NW2d 770 (2006); *Yudashkin v Holden*, 247 Mich App 642, 649;
637 NW2d 257 (2001). If the plain and ordinary meaning of the language
is clear, then judicial construction is neither necessary nor permitted, and
unless explicitly defined, every word or phrase should be accorded its
plain and ordinary meaning, considering the context in which the words
are used. *Yudashkin, supra* at 649-650.

[6] The ER physician indicated that Birkenheuer first passed out right
before the collision, but she conceded that this conclusion was based on
Birkenheuer's account of what occurred. The ER physician also indicated
that emergency medical service (EMS) personnel found him with a
decreased level of consciousness, suggesting that he had previously

rebut the statutory presumption of negligence under the sudden-emergency doctrine fails or succeeds on the basis of Birkenheuer's credibility relative to his testimony that he blacked out just before the accident and that he did not experience sweating, dizziness, or unsteadiness until he reached the exit ramp. The ability of plaintiffs to submit documentary evidence to effectively counter Birkenheuer's subjective claims was near to impossible, and plaintiffs understandably failed to do so. We conclude that this case presents the type of situation that demands application of the language in MCR 2.116(G)(4), which indicates that summary disposition may not be appropriate in all cases in which the adverse party fails to submit sufficient documentary evidence in response to a properly supported C(10) motion.

We find additional support for our conclusion in federal law. Under the federal rules of civil procedure, FR Civ P 56(e), the counterpart of MCR 2.116(G)(4), provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for sum-

---

passed out. However, Birkenheuer's own testimony established that he had also passed out after the accident, which would have been before EMS arrived on the scene, and which could have caused the decreased level of consciousness in and of itself. Birkenheuer testified, "I got out of the [truck], walked to the front of the truck and passed out again in the street." We note that Birkenheuer claimed that he regained consciousness when the vehicles struck and had the presence of mind to set the parking brake and activate his emergency flashers.

mary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party. [Emphasis added.]

The advisory committee notes to FR Civ P 56(e) provide that "[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is *not appropriate*." (Emphasis added.) We hold that this logic should apply equally to the interpretation of Michigan's similarly worded court rule.[7]

In *Wilmington Trust Co v Manufacturers Life Ins Co*, 624 F2d 707 (CA 5, 1980), the defendant insurer denied coverage under a life-insurance policy on the basis that the deceased insured had made a false statement in his policy application.[8] The plaintiffs-appellants argued, in part, that any misstatement in the application was immaterial to the defendant's decision to issue the policy. The federal district court found, on the defendant's motion for summary judgment, that it was beyond genuine dispute that there was a false statement made by the deceased insured on the policy application and that it was material to the decision to issue the policy. Accordingly, the district court granted

[7] In *Shields v Reddo*, 432 Mich 761, 784; 443 NW2d 145 (1989), our Supreme Court noted that "[t]his Court does not lightly adopt a position at odds with the federal rules, after which our rules are patterned." Our ruling is consistent with this preference to adopt a position that is consistent with the federal rules.

[8] We may look to federal caselaw construing comparable court rules for guidance when there is a lack of Michigan cases on the subject. *Brenner v Marathon Oil Co*, 222 Mich App 128, 133; 565 NW2d 1 (1997).

summary judgment under FR Civ P 56 in favor of the defendant. *Id.* at 708. The Fifth Circuit Court of Appeals agreed with the district court that there was no genuine issue of fact that the insured had made a false statement in the insurance application form. *Id.* The court then moved on to the issue regarding whether the false statement was material to the defendant's decision to issue the life insurance policy. After first noting that the defendant had the burden to show materiality, the court stated:

> To meet this burden, the company rested on the testimony of Mr. John L. Cummins, the underwriter who accepted Winsor's application. Cummins testified that, but for the misrepresentation, the company would not have issued Winsor's policy without an aviation exclusion. Cummins emphasized, however, that actuarial evaluation of aviation risks is largely subjective, calling for case-by-case analysis. For their part, appellants produced no competent evidence to rebut Cummins, in whose sole knowledge the truth lay. Their plan, rather, was to impeach Cummins as biased in favor of his employer, the defendant. The district court concededly deprived appellants of this opportunity.
>
> The question, then, becomes whether prospective impeachment of the movant's evidence, without more, can suffice to preclude summary judgment. On the facts of this case, it can and does. See *Irwin v. United States*, 558 F.2d 249, 252-253 (5th Cir., 1977). Here, as in *Irwin*, the disputed fact is (1) within the exclusive knowledge of the movant, whose supporting evidence is (2) subjective in character, and (3) upon whom the burden of persuasion rests. [*Wilmington Trust, supra* at 708-709 (citations omitted).]

The federal appeals court explained that the jury would be free to find that the defendant had not met its burden because of a lack of credibility on the part of the witness. *Id.* at 709. Therefore, on the issue of material-

ity, the court reversed the federal district court's ruling that had granted summary judgment to the defendant. *Id.*

Here, defendants' attempt to rebut the statutory presumption, on which they had the burden of proof, relied on the credibility of Birkenheuer with respect to his deposition testimony that he blacked out before the accident while on the exit ramp and that he was not feeling ill when he left the rest area. These are matters that are subjective in character and primarily within the exclusive knowledge of Birkenheuer. It is self-evident that Birkenheuer would have the motivation to give a version of events that would be favorable to him and that would distance him, and thereby all the defendants, from liability. A jury should be permitted to assess his credibility while on the witness stand. Summary disposition is simply *not appropriate* under these circumstances. MCR 2.116(G)(4).[9]

---

[9] Contrary to the dissenting opinion's allegation, we are not making a finding that Birkenheuer's testimony lacks credibility; rather, we are leaving that issue for the jury to resolve. It is the dissent that is making a credibility determination by arguing that we should affirm the trial court's implicit determination that Birkenheuer was telling the truth and by independently finding his version of events credible. The dissent maintains that Birkenheuer's account was corroborated by the state police and medical personnel, but this "corroboration" was based on Birkenheuer's own statements to police and medical personnel with respect to what transpired, which statements could have been self-serving. To the extent that the corroboration was based on observed physical symptoms and medical testing, there is no dispute that Birkenheuer actually blacked out after the accident, which would explain the characteristics he exhibited, but this does not necessarily corroborate Birkenheuer's claims of what occurred before the accident or his physical state of being at that time. The dissent maintains that there was no evidence that Birkenheuer was dizzy or ill earlier than claimed, but one must appreciate the extreme difficulty in obtaining such evidence, especially given that Birkenheuer was traveling alone.

### III. CONCLUSION

Because crucial credibility determinations need to be resolved with regard to the issues of negligence and the sudden-emergency doctrine, the trial court erred in summarily dismissing the action. Further, because the trial court did not address in any manner defendants' alternative arguments in support of summary disposition with respect to whether White suffered a serious impairment of body function and in regard to the release White signed with her no-fault insurer, we decline to address these issues on appeal, especially considering the intensive review of documentary evidence that is entailed in analyzing the serious-impairment question. See *Candelaria v B C Gen Contractors, Inc*, 236 Mich App 67, 83; 600 NW2d 348 (1999); *Bowers v Bowers*, 216 Mich App 491, 495; 549 NW2d 592 (1996) (appellate review generally limited to issues ruled on by the trial court).

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

MARKEY, P.J., concurred.

KELLY, J. (*dissenting*). I respectfully disagree with the majority's conclusion that summary disposition was "inappropriate" under MCR 2.116(G)(4) "regardless of plaintiffs' failure to submit sufficient documentary evidence to counter Birkenheuer's version of events, which was primarily within his exclusive knowledge." *Ante* at 616. I would affirm because plaintiffs' failure to submit any evidence to create a genuine issue of material fact requires summary disposition pursuant to MCR 2.116(C)(10). The majority, in "concluding that crucial credibility issues" exist when there is no evidence to counter Birkenheuer's version of events, is not leaving

credibility issues for the trier of fact, but, rather, making its own finding that Birkenheuer's undisputed testimony lacks credibility. *Ante* at 616. And credibility issues are not for this Court to decide.

### I. FACTS

Plaintiffs alleged in their complaint that on or about March 15, 2004, at approximately 8:49 p.m., plaintiff Sherita White was driving at or near the intersection of I-96 and Novi Road. Defendant James J. Birkenheuer, who was driving a semi-truck owned by defendant Penske Truck Leasing Company, L.P., in the course of his employment with defendant Taylor Distributing Company, Inc., negligently "fail[ed] to stop within an assured clear distance ahead, violently striking and thereby colliding with [White] and seriously injuring her."

Birkenheuer testified at his deposition that on the day of the accident, he was driving from Cincinnati to Novi. He indicated that while he was on I-275, he stopped at a rest area in the Canton area because he suddenly had to use the restroom "big time." At the rest stop, he experienced severe diarrhea. Birkenheuer stated that after using the restroom, he "hung around a while, walked around to make sure I was finished and felt fine so I continued on to where I had to go because it wasn't far away." He estimated that he was at the rest area for "maybe 20 minutes." Birkenheuer indicated he had not previously been treated for gastrointestinal issues.

Birkenheuer further testified that he thereafter resumed traveling on westbound I-96 and later took the Novi Road exit. Ten to fifteen seconds after getting on that ramp, he "just broke out into a sweat and got dizzy." The very next thing he did when he felt the

sudden sweating and dizziness was to "[h]it the brakes." He did not slam the brakes, but he did "[m]ore than a normal stop. I wanted to get stopped in a hurry." When asked why he hit his brakes, Birkenheuer said, "Because I was dizzy and I told myself—you know, I'm stopping. I don't care if I'm in the middle of this thing and sit here, I'm stopping." He indicated that he did not apply the emergency brake because he had plenty of room to stop and "you don't want to put on an emergency brake because that emergency brake will cause you to jackknife." When he started sweating and became dizzy, he saw White's vehicle "way up there," at least 250 to 300 yards ahead. Birkenheuer testified that he remembered applying the brakes with plenty of room to stop and that he suddenly passed out. He was awoken by the collision. He indicated that he had no recall between the point of applying the brakes and the collision. Birkenheuer described his actions after the collision as follows:

> Set the brake and hit the flashers, and I wanted to get out and see if she was all right. I got out of the car, walked to the front of the truck and passed out again in the street. And the next thing I remember is trying to get up again, and some guys that were already there and said just stay where you are, so I never saw her.

Birkenheuer also expressed that after he passed out again on the pavement in front of his truck he involuntarily urinated and defecated. Birkenheuer testified that he had never before felt dizzy while driving.

Medical records demonstrate that Birkenheuer was taken from the scene to Providence Hospital where he was examined by Ruby Sooch, M.D. Dr. Sooch's report indicates that Birkenheuer reported that he believed he passed out and that he could not recall what occurred between the time he felt dizzy and the impact. The

report also indicates that while emergency medical service (EMS) was assisting Birkenheuer at the scene, he "became diaphoretic [sweaty] and dizzy with decreased level of consciousness." In her deposition, Dr. Sooch testified that cardiac monitor strips demonstrated that while EMS attended to Birkenheuer at the scene, he experienced a low heart rate, which was consistent with the decreased level of consciousness. Dr. Sooch called what Birkenheuer experienced "a true syncopal episode." In layman's terms, that means he "passed out." Dr. Sooch also testified that given the history provided for the purposes of care and treatment, she would say that Birkenheuer's episode happened over "several seconds, a couple minutes. That's pretty sudden."

Defendants moved for summary disposition under MCR 2.116(C)(10) on the grounds that Birkenheuer was not negligent with regard to the accident under the sudden-emergency doctrine or, alternatively, that White did not suffer a serious impairment of body function as a result of the accident. Defendants also argued that they were entitled to summary disposition under MCR 2.116(C)(7) on the basis of a release that White had signed in connection with her claim for first-party no-fault benefits with a non-party insurer.

The trial court granted summary disposition in defendants' favor on the basis of the sudden-emergency doctrine without addressing the issues of serious impairment of body function and release. The trial court provided the following explanation for its decision:

> The evidence establishes that Mr. Birkenheuer passed out while driving his semi truck. He had no prior similar episodes, had no pain or any other symptom just before the accident. He attempted to stop as soon as he began feeling

dizzy and lightheaded. The court finds the collision oc-
curred as the result of a sudden emergency not of the
defendants' own making.

Plaintiffs appeal this ruling.

## II. ANALYSIS

Plaintiffs contend that the trial court erred by granting
defendants summary disposition on the basis of a deter-
mination that there was no genuine issue of material fact
concerning whether Birkenheuer was not negligent as a
matter of law under the sudden-emergency doctrine. I
believe the trial court did not err.

This Court reviews de novo a trial court's decision on a
motion for summary disposition. *Dressel v Ameribank*,
468 Mich 557, 561; 664 NW2d 151 (2003). Summary
disposition is proper under MCR 2.116(C)(10) if the docu-
mentary evidence submitted by the parties, viewed in the
light most favorable to the nonmoving party, shows that
there is no genuine issue regarding any material fact and
the moving party is entitled to judgment as a matter of
law. *Veenstra v Washtenaw Country Club*, 466 Mich 155,
164; 645 NW2d 643 (2002). "If the opposing party fails to
present documentary evidence establishing the existence
of a material factual dispute, the motion is properly
granted." *Quinto v Cross & Peters Co*, 451 Mich 358, 363;
547 NW2d 314 (1996). Recently, this Court recognized
that

> the purpose of summary disposition is not to deny parties
> with apparently weak cases the chance to have their day in
> court and their right to present their case; rather, the
> purpose is to avoid pointlessly wasting resources by send-
> ing a matter to trial when there is no actual dispute to
> resolve. . . .

\* \* \*

> In effect, summary disposition is intended to facilitate
> two important Michigan public policies: resolution of dis-
> putes on their merits, and avoidance of unnecessary expen-
> ditures where there is no actual dispute or where the only
> material dispute is over a point of law. [*Minter v Grand
> Rapids,* 275 Mich App 220, 230; ___ NW2d ___ (2007).]

In regard to automobile accidents, MCL 257.402(a)
provides a rebuttable presumption of negligence under
specified circumstances. It states:

> In any action, in any court in this state when it is shown
> by competent evidence, that a vehicle traveling in a certain
> direction, overtook and struck the rearend of another
> vehicle proceeding in the same direction, or lawfully stand-
> ing upon any highway within this state, the driver or
> operator shall be deemed prima facie guilty of negligence.
> This section shall apply, in appropriate cases, to the owner
> of such first mentioned vehicle and to the employer of its
> driver or operator.

Accordingly, because the truck Birkenheuer was driving
indisputably struck the rear of White's vehicle, there is
a rebuttable presumption that Birkenheuer was negli-
gent with regard to the collision. *Hill v Wilson,* 209
Mich App 356, 359; 531 NW2d 744 (1995).

However, the statutory presumption of negligence
attending a rear-end collision may be overcome by
evidence of a "sudden-emergency." *Szymborski v
Slatina,* 386 Mich 339, 340-341; 192 NW2d 213 (1971).
The sudden-emergency doctrine provides as follows:

> " 'One who suddenly finds himself in a place of danger,
> and is required to act without time to consider the best
> means that may be adopted to avoid the impending danger
> is not guilty of negligence if he fails to adopt what subse-
> quently and upon reflection may appear to have been a
> better method, unless the emergency in which he finds
> himself is brought about by his own negligence.' " [*Vsetula
> v Whitmyer,* 187 Mich App 675, 681; 468 NW2d 53 (1991),

quoting *Socony Vacuum Oil Co v Marvin,* 313 Mich 528, 546; 21 NW2d 841 (1946), quoting Huddy on Automobiles (8th ed), p 359.]

"To come within the purview of this rule the circumstances attending the accident must present a situation that is 'unusual or unsuspected'." *Vander Laan v Miedema,* 385 Mich 226, 232; 188 NW2d 564 (1971), quoting *Barringer v Arnold,* 358 Mich 594, 599; 101 NW2d 365 (1960). "The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist." *Id.* " 'Unsuspected' on the other hand connotes a potential peril within the everyday movement of traffic." *Id.* "To come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected." *Id.*

In the context of a sudden emergency, the " 'test to be applied is what that hypothetical, reasonably prudent person would have done under all the circumstances of the accident, whatever they were.' " *Szymborski, supra* at 341, quoting *Baker v Alt,* 374 Mich 492, 496; 132 NW2d 614 (1965). This accords with the principle that a violation of a statutory duty of care establishes a prima facie case of negligence, but that such a presumption "may be rebutted with a showing of an adequate excuse or justification under the circumstances." *Dep't of Transportation v Christensen,* 229 Mich App 417, 420; 581 NW2d 807 (1998).[1] Even though it may serve

---

[1] Accordingly, that plaintiffs rely on the "assured, clear distance" requirement of MCL 257.627(1) in addition to the plain statutory presumption of negligence attending a rear-end collision under MCL 257.402(a) does not affect the potential applicability of the sudden-emergency doctrine.

to rebut a statutory presumption of negligence, however, the sudden-emergency doctrine is not an affirmative defense because it is an extension of the "reasonably prudent person" rule. *Szymborski, supra* at 341. As such, a defendant asserting the existence of a sudden emergency is not required to establish the existence of the emergency by a preponderance of the evidence. *Id.*

The question on appeal is whether there is any *genuine* issue of material fact regarding whether there was a sudden emergency and whether Birkenheuer acted reasonably under the circumstances. In my opinion, plaintiffs failed to demonstrate any genuine issue of material fact in this regard. Birkenheuer testified that immediately after becoming dizzy and lightheaded, he began to downshift, hit his brakes firmly, and then suddenly lost consciousness. The state police automobile accident report made at the scene corroborates this testimony, indicating that Birkenheuer reported to the police at the scene that he "blacked out" possibly from being ill and remembered slowing for traffic at the intersection. Medical records demonstrate that Birkenheuer was taken from the scene to Providence Hospital where he was examined by Ruby Sooch, M.D. Dr. Sooch's report indicates that Birkenheuer reported that he believed he passed out. The report also indicates that while EMS was assisting Birkenheuer at the scene, he "became diaphoretic and dizzy with decreased level of consciousness." In her deposition, Dr. Sooch testified that cardiac monitor strips demonstrated that while EMS attended to Birkenheuer at the scene, he experienced a low heart rate, which was consistent with the decreased level of consciousness. Dr. Sooch called what Birkenheuer experienced "a true syncopal episode." In layman's terms, that means he "passed out." She also indicated that when EMS found Birkenheuer, he was "alert, but a little drowsy and diaphoretic." He was

sweating and incontinent of urine and stool. Dr. Sooch also testified that, given the history provided for the purposes of care and treatment, she would say that Birkenheuer's episode happened over "several seconds, a couple minutes. That's pretty sudden."

Thus, the evidence presented at the time of plaintiffs' motion corroborates Birkenheuer's deposition testimony that he passed out just before he struck White's vehicle. It further demonstrates that this episode was sudden, unusual, and not caused by Birkenheuer. Even though Birkenheuer waited at the rest stop to make sure he was "finished," i.e., that he would not experience additional diarrhea, there is no evidence that he felt dizzy or passed out before he resumed driving. And even if the circumstantial evidence indicates that he was aware or should have been aware that he may experience diarrhea again, there is no evidence that his condition before he resumed driving alerted him or should have alerted him that he would soon become dizzy and lose consciousness. There is also no evidence that Birkenheuer had ever experienced episodes of dizziness or loss of consciousness before this incident. Therefore, I would conclude that there is nothing in the evidence that creates a genuine issue of material fact regarding whether the incident falls within the purview of the sudden-emergency doctrine.

Plaintiffs contend, and the majority agrees, that there is a genuine issue of material fact because Birkenheuer's motive and intent are at issue and his credibility is crucial. Plaintiffs rely on *Foreman v Foreman*, 266 Mich App 132, 135-136; 701 NW2d 167 (2005), in which this Court noted that "[s]ummary disposition is suspect where motive and intent are at issue or where the credibility of a witness is crucial," and "where the truth

of a material factual assertion of a moving party is contingent upon credibility, summary disposition should not be granted."

In this case, however, there is no evidence calling into question Birkenheuer's motive or intent in stating that he passed out. While it may be convenient for a person in Birkenheuer's situation to falsely assert that he passed out, plaintiffs have failed to bring forth any evidence whatsoever to demonstrate that Birkenheuer made false assertions. On the contrary, *all* the evidence corroborates his assertion, as discussed earlier. By concluding that Birkenheuer may have made false assertions about what happened just before the collision, the majority is recognizing an explanation that, while consistent with known facts and conditions, is not deducible from them as a reasonable inference, which, as a matter of law, is an insufficient basis for denying a motion for summary disposition when there is no genuine issue of material fact. *Minter, supra* at 230.

Further, by concluding that there is a credibility issue on this record, the majority is essentially adjudging Birkenheuer's testimony as possibly suspect rather than determining, when his testimony is not refuted, that there is simply no genuine issue of material fact. And this Court "may not resolve factual disputes or determine credibility in ruling on a summary disposition motion." *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004).

I also disagree with the majority's assertion that Birkenheuer's "claims are virtually impossible to contradict with any documentary evidence . . . ." On the contrary, Birkenheuer might have stated one thing to police at the scene and another to his doctor, skid marks on the road might have been inconsistent with Birkenheuer's story, cardiac monitor strips might have been

inconsistent with Birkenheuer's story, or EMS employees might have testified that Birkenheuer's physical condition was inconsistent with his story. If these facts or similar facts were in the record, there would be evidence to contradict Birkenheuer's testimony and there would be a genuine issue of material fact. But such facts are not in the record. On this record, I would conclude that the trial court was correct in applying the sudden-emergency doctrine.

If the sudden-emergency doctrine were applied, the next question would be whether there was any genuine issue of material fact regarding whether Birkenheuer acted as a reasonably prudent person under the circumstances of the sudden emergency. I would conclude that there is no genuine issue of material fact in this regard. The evidence demonstrates that when Birkenheuer began to sweat and feel dizzy, he began to brake to bring the vehicle to an orderly stop. He did not slam on the brakes or use the emergency brake because White's vehicle was "way up there" and he had "plenty of room to stop." However, as Birkenheuer began to brake, he suddenly and unforeseeably passed out, at which point he was unable to complete the stop. Plaintiffs assert that their accident reconstructionist opined that Birkenheuer could have avoided the collision if he had, "when the medical problem became evident," "aggressively applied the brakes," "pull[ed] to the side of the ramp," or "applied the emergency brakes in combination with the service brakes." However, this opinion presumes that Birkenheuer had foreknowledge *when he began to brake* that he was going to pass out and would be unable to complete the stop he had initiated. But there is no evidence whatsoever that Birkenheuer had such foreknowledge when he decided to stop as he did. Furthermore, in negligence claims, the relevant inquiry is whether the "defendant exercised reasonable care,

not whether the procedures used by [the] defendant could have been made safer." *Boyt v Grand Trunk W R,* 233 Mich App 179, 186; 592 NW2d 426 (1998). Accordingly, the question is not whether Birkenheuer could have stopped more safely, but whether he exercised reasonable care in what he did when he became dizzy. Certainly once Birkenheuer lost consciousness, he could do nothing more to avoid the collision. I would conclude that plaintiffs failed to establish a genuine issue of material fact regarding whether Birkenheuer acted as a reasonably prudent person under the circumstances.

For these reasons, I would affirm.