*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAMELA LOUISE ANDERSON,

UNPUBLISHED
July 22, 2025
2:52 PM

Plaintiff-Appellee,

v

No. 369351
Antrim Circuit Court
LC No. 23-009215-DO

SERGIO MICHAEL LUCCI,

Defendant-Appellant.

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

In this divorce action, defendant appeals as of right the property division ordered in the trial court's judgment of divorce; however, defendant is actually challenging the trial court's grant of plaintiff's motion for summary disposition under MCR 2.116(C)(10), in which plaintiff argued that: (1) defendant was estopped from seeking any interest in plaintiff's property on the basis of an alleged oral postnuptial agreement, and (2) the parties entered into a full and final property settlement agreement after the divorce proceedings were initiated. For the reasons set forth in this opinion, we vacate the trial court's order of summary disposition and the trial court's judgment of divorce, and we remand for further proceedings.

## I. FACTS

This case arises from the divorce proceedings—and the resulting property division—between the parties. The parties got married in 2007. At the time of these proceedings, plaintiff was 68 years old, and defendant was 65 years old. There were no children born of this marriage.

In 2010, the parties purchased a property in Battle Creek, Michigan, and in 2013, the parties purchased a property on Torch Lake, in Kewadin, Michigan. The parties generally maintained separate bank accounts during their marriage, but they shared one joint bank account for expenses associated with their properties. After defendant's retirement in 2011, and before plaintiff's retirement in 2020, plaintiff earned about $300,000 a year; therefore, plaintiff largely funded the party's expenses during that time.

In April 2023, defendant filed a complaint for divorce in the Barry County Circuit Court, and on May 1, 2023, the Barry County Court entered an ex parte mutual temporary restraining order that prohibited the parties from concealing, assigning, selling, destroying, transferring, mortgaging, or encumbering either parties' assets. The restraining order also specifically prohibited the parties from distributing proceeds from the sale of the Battle Creek property, which was under a purchase agreement at the time of the order, without a written agreement between the parties. Defendant never served plaintiff with any documents related to the Barry County case,[1] including the restraining order. While plaintiff was unaware of the restraining order, defendant asked her for part of the sale proceeds from the Battle Creek property so that he could purchase a home in Florida. Plaintiff gave defendant $385,000 from the proceeds and allowed him to take personal property from the Battle Creek property. Additionally, without plaintiff's knowledge or approval, defendant withdrew significant amounts of money from his retirement account and personal savings accounts, and he obtained a mortgage for his Florida property.

On May 3, 2023, plaintiff filed a complaint for divorce in the Antrim County Circuit Court.[2] On July 25, 2023, the parties stipulated to dismiss the Barry County proceedings and proceed in Antrim County. As the parties proceeded with the divorce, plaintiff alleged that the parties had an oral postnuptial agreement, in which plaintiff agreed to purchase, maintain, and furnish the parties' real properties and be responsible for all taxes, insurance, and utilities, so long as the properties would remain solely hers. Plaintiff also alleged that the parties entered into a full and final oral property settlement agreement after the divorce proceedings were initiated, in which her $385,000 payment to defendant constituted the parties' full and final divorce settlement. Plaintiff eventually moved for summary disposition under MCR 2.116(C)(10), asking the court to enter a judgment of divorce recognizing the alleged oral agreements between the parties and dismissing the case. In December 2023, the trial court granted plaintiff's motion and entered a judgment of divorce awarding: (1) the parties their respective bank accounts, vehicles, and debts; and (2) plaintiff the Torch Lake property, the remaining proceeds from the sale of the Battle Creek property, and the parties' joint bank account. Defendant now appeals.

## II. COLLATERAL ESTOPPEL

Defendant argues that the trial court erred by applying the doctrine of collateral estoppel to the parties' claims when granting plaintiff's motion for summary disposition. We agree.

### A. STANDARD OF REVIEW

We review de novo the application of the doctrines of res judicata or collateral estoppel. *King v Munro*, 329 Mich App 594, 599; 944 NW2d 198 (2019).

### B. ANALYSIS

"Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue

---

[1] 5th Circuit Court, Case No. 2023-0000000263-DO.

[2] 13th Circuit Court, Case No. 23-009215-DO.

in question was actually and necessarily determined in that prior proceeding." *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 715; 848 NW2d 482 (2014) (quotation marks and citation omitted). A critical factor when applying the doctrine of collateral estoppel is "the determination of whether the respective litigants were parties or privy to a party to an action in which a valid judgment has been rendered." *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 283; 983 NW2d 401 (2022) (quotation marks and citation omitted). "Generally, application of collateral estoppel requires (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality of estoppel." *King*, 329 Mich App at 599 (quotation marks and citation omitted).

In this case, the trial court found that the doctrine of collateral estoppel applied because the Barry County Circuit Court entered an ex parte mutual temporary restraining order, which defendant violated, before the parties stipulated to dismiss the Barry County proceedings and continue their divorce proceedings in Antrim County. Even though this case was initiated in Barry County before proceeding in Antrim County, there is no evidence that: (1) the parties had an opportunity to litigate these issues in Barry County, or (2) the Barry County proceedings resulted in a valid and final judgement. Accordingly, the trial court erred to the extent that it applied the doctrine of collateral estoppel to the present case. See *id*.

## III. SUMMARY DISPOSITION

Defendant further argues that the trial court erred by granting summary disposition in plaintiff's favor because there was a genuine issue of material fact regarding the existence of any alleged oral agreements between the parties. We agree.

## A. STANDARD OF REVIEW

We "review de novo a trial court's decision on a motion for summary disposition." *Bailey v Antrim Co*, 341 Mich App 411, 421; 990 NW2d 372 (2022) (quotation marks and citation omitted). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a party's claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Trial "courts may not resolve factual disputes or determine credibility in ruling on a summary disposition motion." *White v Taylor Distrib Co Inc*, 275 Mich App 615, 625; 739 NW2d 132 (2007) (quotation marks and citation omitted).

## B. ANALYSIS

In this case, plaintiff alleged that the parties entered into the following oral agreements: (1) a postnuptial agreement, in which plaintiff agreed to purchase, maintain, and furnish the parties' real properties and be responsible for all taxes, insurance, and utilities, so long as the properties

would remain solely hers; and (2) a full and final property settlement agreement, in which her $385,000 payment to defendant constituted the parties' full and final divorce settlement.

In support of the alleged postnuptial agreement, plaintiff presented: (1) promissory notes, with only her signature, for the Battle Creek and the Torch Lake properties; and (2) records showing defendant's minimal income during the parties' marriage, which she argued reflected her financial support of him. In response, defendant presented deeds and mortgages for the Battle Creek and Torch Lake properties that contained both parties' names. Defendant also argued that he completed maintenance and repairs for the parties' various properties and made smaller financial contributions to the parties' expenses. When viewing this competing evidence in the light most favorable to defendant, reasonable minds could differ as to whether the parties entered into the alleged oral postnuptial agreement. See *El-Khalil*, 504 Mich at 160. Accordingly, a genuine issue of material fact existed, and the trial court erred by granting summary disposition on the matter. See *id*.

Moreover, in support of the alleged final property settlement agreement, plaintiff drew attention to the fact that defendant violated the Barry County restraining order by requesting sale proceeds, purchasing a home in Florida, withdrawing funds from his retirement account and personal accounts, and taking out a mortgage. In response, defendant presented text messages from plaintiff that were exchanged after the transfer of the sale proceeds and indicated that the parties did not consider the $385,000 payment to be the parties' final divorce settlement. Not only does this competing evidence create a genuine issue of material fact, see *id*., but also, plaintiff's argument is misplaced. Defendant's violation of the restraining order does not necessarily indicate that defendant agreed to accept no other property in the division of marital assets. To the extent that the trial court attempted to resolve the factual dispute of what defendant was entitled to after violating the restraining order, the trial court erred. See *White*, 275 Mich App at 625. Even though defendant violated the restraining order, a genuine issue of material fact existed as to whether the parties entered into the alleged final settlement agreement; therefore, the trial court erred by granting summary disposition on the matter. See *El-Khalil*, 504 Mich at 160.

## IV. ENFORCEABILITY OF THE ALLEGED ORAL AGREEMENTS

Defendant further contends that even assuming, arguendo, that the alleged oral agreements existed, they would not be enforceable because they are against public policy and contrary to the statute of frauds. We agree.

## A. STANDARD OF REVIEW

Because postnuptial and other marital agreements are contracts, we review them using contract principles. *Skaates v Kayser*, 333 Mich App 61, 71; 959 NW2d 33 (2020). "Accordingly, we review de novo the trial court's interpretation of a contract as well as its ruling on legal questions that affect the contract's validity." *Id*. But, "we review for clear error any factual findings made by the trial court." *Id*. "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. Special deference is afforded to a trial court's factual findings that are based on witness credibility." *Hodge v Parks*, 303 Mich App 552, 555; 844 NW2d 189 (2014) (quotation marks and citation omitted).

B. ANALYSIS

"[U]nder Michigan law, a couple that is maintaining a marital relationship may not enter into an enforceable contract that anticipates and encourages a future separation or divorce." *Wright v Wright*, 279 Mich App 291, 297; 761 NW2d 443 (2008). This Court has addressed the validity of postnuptial agreements as follows:

> [P]ost-nuptial agreements are not invalid *per se*, because some postnuptial agreements may be intended to promote harmonious marital relations and keep the marriage together. In such situations, the public policy objection to postnuptial contracts . . . does not arise . . . . If a postnuptial agreement seeks to promote marriage by keeping a husband and wife together, Michigan courts may enforce the agreement if it is equitable to do so. [*Hodge*, 303 Mich App at 558-559 (quotation marks, citations, and alternations omitted).]

"Postnuptial agreements that make it more financially attractive for a party to divorce are viewed as encouraging divorce and have been invalidated on that basis." *Skaates*, 333 Mich App at 76.

Throughout the proceedings in this case, plaintiff argued that the parties had an oral postnuptial agreement in which plaintiff would financially support the parties and purchase, maintain, furnish, and be financially responsible for the parties' properties so long as the properties would remain solely hers. If true, this agreement would entitle plaintiff to the parties' real properties and leave defendant with less than a quarter of the marital estate. Therefore, even if the parties did enter into this alleged oral postnuptial agreement, it would be invalidated on the basis that it encouraged divorce by making it financially attractive for plaintiff to divorce defendant. See *Skaates*, 333 Mich App at 76; *Wright*, 279 Mich App at 297.

An additional consideration when addressing postnuptial agreements is Michigan's statute of frauds, which provides as follows:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing. [MCL 566.106.]

Therefore, according to the statute of frauds, the alleged oral agreements in this case, which concerned the parties' interests in land, cannot be enforced without a writing. See MCL 566.106.

Plaintiff agrees that the alleged oral agreements were not in writing, but plaintiff argues that the doctrine of partial performance vitiates the requirements of the statute of frauds to the parties' alleged postnuptial agreement and alleged divorce settlement agreement. In *Barclae v Zarb*, 300 Mich App 455, 475; 834 NW2d 100 (2013) (quotation marks and citation omitted), this Court stated that the doctrine of partial performance can remove an agreement from the statute of frauds, reasoning as follows:

If one party to an oral contract, in reliance upon the contract, has performed his obligation thereunder so that it would be a fraud upon him to allow the other party to repudiate the contract, by interposing the statute, equity will regard the contract as removed from the operation of the statute.

But, for the doctrine of partial performance to apply to an agreement, the party seeking to enforce the agreement must first show that the oral contract exists by clear and convincing evidence. *Id*. Clear and convincing evidence is that which "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Kefgen v Davidson*, 241 Mich App 611, 625; 617 NW2d 351 (2000) (quotation marks and citations omitted; alterations in original).

In light of the evidence presented to the trial court in this case, plaintiff failed to establish the existence of either alleged oral agreement by clear and convincing evidence. See *id*. Regarding the alleged postnuptial agreement, defendant provided mortgage statements and deeds to the Battle Creek and Torch Lake properties that named both parties and showed defendant's recorded interest in the properties. Regarding the alleged final settlement agreement, defendant provided text messages from plaintiff that were exchanged after the transfer of sale proceeds and indicated that the parties did not consider the $385,000 payment to be the parties' final divorce settlement. Because plaintiff has failed to show that either oral contract existed by clear and convincing evidence, the trial court could not apply the doctrine of partial performance to the alleged agreements. See *Barclae*, 300 Mich App at 475.

Accordingly, even if the alleged oral agreements existed, they would not be enforceable because they are against public policy and contrary to the statute of frauds.

V. CONCLUSION

We vacate the trial court's order of summary disposition and the trial court's judgment of divorce, and we remand this matter for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney