# STATE OF MICHIGAN

# COURT OF APPEALS

NORMAN YATOOMA & ASSOCIATES, PC,

Plaintiff-Appellee,

v

COHEN, LERNER & RABINOVITZ, PC, and
STEVEN Z. COHEN,

Defendants,

and

PNC BANK, NA,

Appellant.

UNPUBLISHED
October 18, 2018

Nos. 338368 & 339003
Oakland Circuit Court
LC No. 2016-153017-CB

NORMAN YATOOMA & ASSOCIATES, PC,

Plaintiff-Appellee,

v

COHEN, LERNER & RABINOVITZ, PC, and
STEVEN Z. COHEN,

Defendants-Appellants.

No. 339047
Oakland Circuit Court
LC No. 2016-153017-CB

Before: SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals, defendants, Cohen, Lerner & Rabinovitz, PC and Steven Z. Cohen, appeal as of right the order of the trial court granting summary disposition under MCR 2.116(C)(10) in favor of plaintiff Norman Yatooma & Associates, PC, and denying defendants' motion for summary disposition under that same court rule. Appellant PNC Bank (PNC) appeals as of right challenging the trial court's order denying its motion to intervene. We reverse and remand.

-1-

## I. FACTS

This case arises out of an arbitration award. Jeffrey Spinello and Karen Hazelwood are former spouses who together owned a franchise known as Thomas Kinkade At The Downtown Mall, LLC (collectively Spinello), which they operated in Charlottesville and Fredericksburg, Virginia. In 2003, Spinello hired plaintiff to represent their interests in arbitration against Media Arts Group, Inc. and the now-deceased artist Thomas Kinkade, as well as another related party, whom Spinello alleged had defrauded them in connection with the franchise. The arbitration panel ultimately awarded Spinello over $2,000,000 in damages and attorney fees. After the arbitration proceedings concluded, however, Kinkade's Media Arts enterprise filed for Chapter 11 bankruptcy.

In 2012, plaintiff commenced a lawsuit against Spinello seeking payment of attorney fees arising from the arbitration. In October 2014, Spinello, represented by defendants, entered into a settlement agreement with plaintiff in which Spinello agreed to pay plaintiff as follows, in pertinent part:

1. Payment Terms. Plaintiff [Yatooma firm] shall be entitled to receive the total amount of Eight Hundred Thirty Seven Thousand Five Hundred Dollars ($837,500) which amount shall be paid by [Spinello] in the following manner:

a. The Clerk of the Court ("Clerk") shall immediately pay to Plaintiff, through its counsel . . . those funds held in the Court's escrow account . . . . The Parties believe that the amount held by the Clerk is at least . . . ($264,788). . . .

b. Plaintiff shall immediately receive . . . ($47,146) from the IOLTA trust account of [defendant Cohen firm], which amount constitutes a portion of the most recently received quarterly disbursements received from Diablo.

c. Commencing with the Diablo quarterly disbursement of January 2015, Plaintiff shall be entitled to seven (7) consecutive quarterly payments of . . . ($65,700), which amount shall be paid from the [defendant Cohen firm's] IOLTA account, if said Firm continues to be the recipient of the quarterly disbursements, or shall be paid from Diablo or its assign directly to Plaintiff or David W. Potts JD PLLC.

d. Plaintiff shall be entitled to a final payment upon the eighth quarterly distribution from Diablo in whatever amount is necessary to bring the total payment received by Plaintiff to . . . ($837,500).

The parties agree that plaintiff initially received $264,788, at that time held with the court clerk, and also $47,146, at that time held by defendants on behalf of Spinello, in accordance with the settlement agreement. Plaintiff also apparently received the first quarterly payment as anticipated under the 2014 settlement agreement. Norman Yatooma (Yatooma) testified in his deposition that plaintiff received between $300,000 and $350,000 as a result of the 2014 settlement agreement, constituting "some measure of what is contemplated in (c) and that's what

leaves us with our balance," being a "balance of just something south of $500,000 on the total term of $837,500 . . . ."

Sometime after April 2015, the Kinkade bankruptcy was converted from Chapter 11 to Chapter 7, resulting in a cessation of quarterly payments from the Chapter 11 bankruptcy plan to Spinello, and thus a cessation of payments from Spinello to plaintiff under the 2014 settlement agreement. Anticipating that the bankruptcy claim was unlikely to be paid from the Chapter 7 bankruptcy, Spinello, represented by defendants, sold the remaining claim in the Kinkade bankruptcy for $550,000. According to defendant Steven Cohen (Cohen), before Spinello sold the bankruptcy claim defendants repeatedly advised plaintiff and plaintiff's attorney of Spinello's intention to do so. Cohen testified that he believed that plaintiff had approved the sale of the bankruptcy claim and had agreed to take a pro rata share of what was owed it as satisfaction of plaintiff's claim against Spinello. Operating under that understanding, after receiving the payment for the sale of the claim on behalf of Spinello, defendants contacted plaintiff to arrange to issue a check to plaintiff for $234,531.86 upon plaintiff signing a release indicating that Spinello's debt to plaintiff was thereby satisfied. Plaintiff refused to sign the release, instead demanding that defendants pay the funds to plaintiff at once. Defendants refused to pay the funds to plaintiff unless plaintiff first signed the release.

Cohen testified in his deposition that the "sale [of the Spinello bankruptcy claim] was premised upon Yatooma's agreement to take a pro rata share of the sale proceeds in exchange for an executed Satisfaction of Settlement and Release of any actual or potential claim that Yatooma had, or believed himself to have had, against Spinello." In his affidavit, Cohen stated:

> Upon receipt of the $550,000 that Spinello received as a result of his sale of his bankruptcy claim, I issued a check to Spinello reflecting his pro rata share of the sale proceeds and have consistently retained $234,531.86 of the sale proceeds, reflecting Yatooma's pro rata share ("the escrowed monies"), in the Cohen, Lerner & Rabinovitz, P.C. IOLTA account.

In addition, Cohen testified during his deposition:

> Mr. Yatooma had agreed to sign a release, in a phone call that he made to my house where we discussed this.

> Mr. Potts [plaintiff's attorney] and I talked about this, and he indicated that he thought it was a good idea and he would communicate it to Mr. Yatooma.

> *  *  *

> . . . Mr. Potts, in my phone conversation with him, said he understood, he would recommend this resolution, that he was having trouble reaching [Yatooma] but would reach him, and that he would make sure he would get back to me and give me specific permission, which he did not.

> So, I then wrote him another e-mail saying, I have a deadline, if I don't hear from you, I'm going to have to make this deal on these terms, which

included a pro-rata reduction on the amount of money received by both my client and Mr. Yatooma, to make it fair, which is what I did.

* * *

. . . I then sent him a release agreement. And then, he wrote me back in e-mail, I didn't say I would sign your agreement, I said I would review your papers, which was a lie. He had told me, prepare the release, get it to me, I'll sign it.

By contrast, Yatooma stated in his affidavit that he "never spoke with Steven Cohen about signing any release ahead of his unilateral decision to purportedly reduce the attorney fees due under the Settlement Agreement in *Yatooma v Spinello*," and "never agreed to sign a release as a condition of receiving partial payment under the settlement agreement." According to Yatooma's deposition testimony, "[a]t some point in time I gained an understanding of the fact that [Cohen] was trying to broker a deal to sell the debt." Yatooma testified in his deposition that Cohen "told me I could have a check tomorrow and then tomorrow came and he tried to have me sign a release for the balance of my debt which . . . I ultimately refused to sign and he refused to give me the money." Yatooma did not "recall when in time I learned that, from whom I learned that or what the amount was that [Cohen] was trying to sell [the Spinello bankruptcy claim] for." David Potts, plaintiff's attorney, likewise averred that he never spoke with Cohen nor agreed with Cohen regarding plaintiff signing a release.

In 2016, plaintiff brought this action seeking declaratory judgment, requesting that the trial court declare the disputed funds to be plaintiff's property, and requesting that the trial court also declare certain funds distributed to third parties to belong to plaintiff. Plaintiff also sought damages, alleging conversion and unjust enrichment. Plaintiff subsequently amended its complaint to allege the additional count of tortious interference with a contract.

PNC moved to intervene in the trial court, alleging that plaintiff is indebted to PNC for an unpaid loan in the amount of $1,759,814.70, and asserting that it had a first priority right to the amounts being held by defendants. In support of its alleged grounds for intervention, PNC submitted proof of its lawsuit filed in federal district court against plaintiff and Yatooma, alleging breach of a promissory note against plaintiff and breach of guarantee against Yatooma. Additionally, PNC provided its security agreement between plaintiff and National City Bank (now PNC via merger), which purports to grant PNC a security interest in "All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles" of plaintiff, together with the financing statement allegedly perfecting that security interest. The trial court denied PNC's motion to intervene, and likewise denied its motion for reconsideration, on the grounds that PNC had not yet obtained a judgment against plaintiff.

Both plaintiff and defendants moved for summary disposition under MCR 2.116(C)(10). The trial court granted plaintiff summary disposition on the count of its complaint seeking declaratory judgment, ordering that defendants "immediately turn over $269,530.00

($234,531.66 plus $35,000.34[1]) to Plaintiff." The trial court held that plaintiff's remaining claims were moot, and also denied defendants' motion for summary disposition. Defendants and PNC now appeal.

## II. ANALYSIS

### A. PNC'S MOTION TO INTERVENE

PNC contends that the trial court erroneously denied its motion to intervene because PNC established grounds for intervention as of right under MCR 2.209(A)(3). We agree.

By intervening, a third party becomes a party in a suit that is pending between others. *Hill v LF Transp, Inc*, 277 Mich App 500, 508; 746 NW2d 118 (2008). MCR 2.209(A) provides for intervention as of right as follows:

On timely application a person has a right to intervene in an action:

(1) when a Michigan statute or court rule confers an unconditional right to intervene;

(2) by stipulation of all the parties; or

(3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

We liberally construe this rule to permit intervention when the applicant's interests otherwise might be inadequately represented. *State Treasurer v Bences*, 318 Mich App 146, 150; 896 NW2d 93 (2016). However, "intervention may not be proper where it will have the effect of delaying the action or producing a multifariousness of parties and causes of action." *Id.*, quoting *Hill*, 277 Mich App at 508 (quotation marks and citation omitted). And although generally we review a trial court's decision on a motion to intervene for an abuse of discretion, *Bences*, 318 Mich App at 149, we review a trial court's resolution of issues of law, including the interpretation of statutes and court rules, de novo. *Id*.

In this case, PNC does not argue that there is either a statute or court rule that confers upon it an unconditional right to intervene, MCR 2.209(A)(1), nor that the parties stipulated to intervention, MCR 2.209(A)(2). Rather, PNC contends that it claims an interest relating to the disputed funds and is "so situated that the disposition of the action may as a practical matter

---

[1] According to defendants, the $35,000.34 in question are funds belonging to their client, Spinello, who had authorized defendants to hold the funds for payment of future attorney fees to defendants, if incurred.

impair or impede [PNC's] ability to protect that interest." MCR 2.209(A)(3). PNC submitted documentation to the trial court in support of its motion to intervene indicating that it had initiated a case against plaintiff in federal district court seeking to collect $1,759,814.70 by enforcing a promissory note secured by Yatooma's guarantee, and also by a perfected security interest in plaintiff's accounts, and alleging that PNC had a priority right to the amounts plaintiff might recover from defendants. The trial court denied PNC's motion, concluding that because PNC had not yet obtained a judgment against plaintiff, PNC had no right to intervene.

But even though PNC had not obtained a judgment against plaintiff, PNC certainly *claimed an interest relating to the property*, that is, PNC claimed an interest in the funds that are the subject of this lawsuit. Also, PNC was situated such that the disposition of the action might practically impair or impede its ability to protect that interest, given that PNC's entitlement to plaintiff's accounts was at that time being litigated in federal court. Further, there is no indication that PNC's interest in plaintiff's accounts is adequately represented by the parties to the lawsuit, given that plaintiff is a claimant to the disputed funds and defendants contest plaintiff's claim to the funds. In addition, although PNC's intervention would add a party and a claim, there is no indication that PNC's intervention would delay the action or produce "a multifariousness of parties and causes of action." *Bences*, 318 Mich App at 150. We therefore conclude that PNC was entitled to intervene under MCR 2.209(A).

## B. SUMMARY DISPOSITION

Plaintiff's complaint, as amended, sought damages for conversion, statutory conversion, unjust enrichment, and tortious interference with a contract, and also sought declaratory relief, asking the trial court to determine that the funds being held by defendants were plaintiff's property. Both plaintiff and defendants moved for summary disposition under MCR 2.116(C)(10) on the ground that there was no genuine issue of material fact, with each party arguing that it was entitled to judgment as a matter of law. The trial court granted plaintiff summary disposition on the count of plaintiff's complaint seeking declaratory judgment,[2] finding no genuine issue of material fact and finding that plaintiff was entitled to declaratory relief. On appeal, defendants contend that the trial court erred in granting plaintiff's motion for summary disposition. We agree.

### 1. STANDARDS OF REVIEW

This Court reviews de novo a trial court's grant or denial of summary disposition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich App 1, 5-6; 890 NW2d 344 (2016). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint, S*hinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768; 887 NW2d 635 (2016), and should be granted if "there is no genuine issue regarding any material fact and the

---

[2] Plaintiff's complaint also sought declaratory judgment "[t]hat the funds distributed to third parties are the property of Plaintiff." It is unclear whether the trial court's award of declaratory relief disposes of this request.

moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A party moving for summary disposition pursuant to MCR 2.116(C)(10) has the initial burden to support its motion by affidavits, depositions, admissions, or other documentary evidence. *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). Thereafter, the party opposing the motion must go beyond the pleadings and set forth specific facts demonstrating the existence of a genuine issue of material fact. *Oliver v Smith*, 269 Mich App 560, 564; 715 NW2d 314 (2006). The trial court must then consider all the admissible evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). If, giving the benefit of reasonable doubt to the nonmoving party, the record leaves open an issue upon which reasonable minds could differ, a genuine issue of material fact exists. *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014).

This Court also reviews de novo a decision to grant or to deny declaratory judgment, while reviewing the trial court's findings regarding the decision for clear error. *Ter Beek v City of Wyoming*, 297 Mich App 446, 452; 823 NW2d 864 (2012). Clear error occurs when we are left with a definite and firm conviction that a mistake has been made. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 660; 819 NW2d 28 (2011).

## 2. DECLARATORY JUDGMENT

The trial court granted plaintiff's motion for summary disposition on plaintiff's request for declaratory relief, determining that there was no genuine issue of material fact and declaring that the funds being held by defendants were plaintiff's property. On appeal, defendants challenge this determination, arguing that it is unsupported by the record. We conclude that the resolution of the ownership of the funds in question hinges on two separate issues of material fact. The first is whether plaintiff, represented by Potts, and Spinello, represented by defendants, reached an oral agreement in which plaintiff would release its claim against Spinello in exchange for the $234,531.86 now held by defendants. The second disputed factual issue is whether plaintiff is entitled to the funds in the first place under its 2014 settlement agreement with Spinello. Because a genuine issue of material fact exists as to both questions, summary disposition under MCR 2.116(C)(10) was not warranted.

MCR 2.605(A)(1) provides:

> In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

"The purpose of a declaratory judgment is to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient [fashion] the rights and obligations of all litigants." *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2007). "The language in this rule is permissive, and the decision whether to grant declaratory relief is within the trial court's sound discretion." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 545; 904 NW2d 192 (2017).

In this case, throughout the trial court proceedings plaintiff maintained that the funds in question belonged to it by virtue of its 2014 settlement agreement with Spinello, and that plaintiff had not agreed to sign a release in exchange for the funds. Specifically, Yatooma testified by deposition that he never spoke with defendants regarding a release before the sale of the Spinello bankruptcy claim, nor did he subsequently agree to execute a release as a condition precedent to defendants releasing the funds. By contrast, Cohen testified in his deposition that he acted on behalf of Spinello to sell the bankruptcy claim, believing that plaintiff was in agreement with the sale and had agreed to accept a pro rata share as satisfaction of the amount owed plaintiff by Spinello.

In granting plaintiff summary disposition, the trial court reasoned, in pertinent part:

> This Court has previously recognized that the central issue in this case [is] "whether Plaintiff and Defendants agreed to the sale or that the release of the money was conditioned on Plaintiff's signing a release."
>
> On this issue, Plaintiff presents the Affidavits of Norman Yatooma and David Potts – as well as other documentary evidence. Both Yatooma and Potts specifically claim that they "never spoke with Steven Cohen about (or agreed to) signing any release."
>
> Defendants, in contrast, appear to argue that Yatooma himself agreed to sign a release. But a careful reading of Cohen's deposition and affidavit establish that the alleged, verbal "release agreement" post-dated the October 18, 2015 Settlement Agreement that is the source of the $234,531.66 in funds being held by Defendants.
>
> * * *
>
> And defendants admit $234,531.66 they are holding belongs to Plaintiff.
>
> In other words, Defendants admit that they came into possession of money belonging to Plaintiff. And, when they acquired said money, there was no agreement that Plaintiff would sign a release in order for the money to be turned over.
>
> While already holding Plaintiff's money, in January 2016, Cohen claims that he spoke with Yatooma – who then agreed to sign a release. And, relying on this representation, Cohen claims that he sent a release to Plaintiff on February 4, 2016. But, Cohen claims, he received a return email the same day stating that Yatooma would not sign the release.
>
> But at this point, Defendant could offer no consideration to support the alleged post-receipt, verbal agreement – making it enforceable. This is so because Defendants held Plaintiff's money. And they came into possession of the same without any agreement Plaintiff would sign a release.

-8-

At that point, defendant had no legal basis to refuse to turn over Plaintiff's property to Plaintiff.

Although a trial court tests the factual support of a plaintiff's claim when it rules upon a motion for summary disposition under MCR 2.116(C)(10), a trial court may not resolve factual disputes or determine the credibility of witnesses when ruling on a motion for summary disposition. *White v Taylor Distrib Co, Inc*, 275 Mich App 615, 624-625; 739 NW2d 132 (2007). This is especially true when motive and intent are at issue or when the credibility of a witness is crucial. *Vanguard Ins Co v Bolt*, 204 Mich App 271, 276; 514 NW2d 525 (1994). When the truth of a movant's material factual assertion rests on a deponent's credibility, a genuine issue of material fact exists and summary disposition under MCR 2.116(C)(10) should not be granted. *White*, 275 Mich App at 625.

Here, a question of material fact exists because the parties disagree regarding whether plaintiff orally agreed to sign a release in exchange for the funds. The record thereby leaves open an issue on which reasonable minds might differ. See *Jimkoski v Shupe*, 282 Mich 1, 5; 763 NW2d 1 (2008). Moreover, resolving that question required the trial court to weigh the credibility of Cohen's deposition testimony against that of Yatooma. The necessity of the trial court making such credibility determinations precludes summary disposition. *Arber v Stahlin*, 382 Mich 300, 308; 170 NW2d 45 (1969) ("[S]ummary judgment is not available whenever a presented issue of material fact turns upon the credibility of an affiant or witness whose deposition has been taken.").

We further note that the trial court's finding that defendants admitted that the funds belonged to plaintiff is not supported by the record. To the contrary, that is the heart of the dispute in this case. Defendants consistently asserted before the trial court their position that the funds were payable to plaintiff only if plaintiff agreed to sign a release accepting that amount as payment in full of Spinello's obligation to plaintiff. Defendants consistently asserted that if plaintiff did not so agree, then the funds do not belong to plaintiff because the 2014 settlement agreement only provides for payment of funds received through the Chapter 11 bankruptcy. Those payments ceased when the Chapter 11 bankruptcy was converted to a Chapter 7 bankruptcy. Because the Chapter 11 bankruptcy no longer exists, argue defendants, the 2014 settlement agreement is void because it is now impossible to perform (supervening impossibility). Making the alleged obligation even murkier is that the funds at issue do not emanate from the bankruptcy estate that was the subject of the underlying agreement, but from Spinello's sale of the bankruptcy claim to a third party. In any event, the record demonstrates that defendants do not agree that the funds belong to plaintiff, and the trial court's finding to the contrary is therefore erroneous.

Because a genuine issue of material facts exists, we hold that plaintiff was not entitled to declaratory judgment and the trial court erroneously granted plaintiff summary disposition on that count of plaintiff's complaint.

### 3. THE REMAINING COUNTS

The trial court determined that the remaining counts of plaintiff's complaint were moot in light of its declaratory judgment, and "[f]or the same reasons" denied defendants' motion for

summary disposition. On appeal, defendants argue that they are entitled to summary disposition of the remaining counts of plaintiff's complaint. However, having concluded that the trial court erred in its ruling on plaintiff's request for declaratory judgment, we decline to reach defendants' challenges to the remaining counts of plaintiff's complaint, and remand to provide the trial court an initial opportunity to address those issues.

We reverse the order of the trial court, and remand for further proceedings consistent with this opinion. We instruct the trial court to permit PNC to intervene. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Michael F. Gadola