*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMI LESSARD,

        Plaintiff,

and

DWAYNE PARLER,

        Plaintiff-Appellant,

v

JAMES WHITTEMORE,

        Defendant,

and

HOME-OWNERS INSURANCE COMPANY,

        Defendant-Appellee,

UNPUBLISHED
September 3, 2019

Nos. 338306
Macomb Circuit Court
LC No. 2016-001775-NI

JAMI LESSARD

        Plaintiff-Appellant,

and

DWAYNE PARLER,

        Plaintiff,

v

JAMES WHITTEMORE,

Nos. 344653
Macomb Circuit Court
LC No. 2016-001775-NI

-1-

Defendant,

and

HOME-OWNERS INSURANCE COMPANY,

Defendant-Appellee,

Before: K. F. Kelly, P.J., and Tukel and Redford, JJ.

PER CURIAM.

In these consolidated cases, plaintiffs have sought personal protection insurance (PIP) benefits. In Docket No. 338306, plaintiff Dwayne Parler appeals by leave granted[1] the trial court's order granting in part and denying in part Parler's motion for reconsideration. Relevant here, the trial court declined to reinstate Parler's claims for wage-loss benefits and replacement services. In Docket No. 344653, plaintiff Jami Lessard appeals by delayed leave granted[2] a prior order which granted summary disposition to Home-Owners on all of Lessard's claims. For the reasons provided below, we affirm the grant of summary disposition as to Lessard's claims and reverse the grant of summary disposition as to Parler's claims for lost wages and replacement services.

I. BASIC FACTS

This case arises out of a traffic accident that occurred on December 21, 2015. Defendant James Whittemore's vehicle struck the rear of Lessard's vehicle, in which Parler was a passenger. Both Lessard and Parler filed claims for first-party no-fault benefits against Home-Owners, Lessard's no-fault insurer.[3] Plaintiffs' claims included claims for reasonable and necessary expenses for care, recovery, or rehabilitation; lost wages; and reasonable and necessary replacement services.

Lessard testified that she injured her head, neck, back, and knee as a result of the accident. She also testified that she did not have any head, neck, or back problems "before the accident" and further stated that she had not had any knee problems in the five years preceding the December 21, 2015 accident.

---

[1] *Lessard v Whittemore*, unpublished order of the Court of Appeals, entered October 6, 2017 (Docket No. 338306).

[2] *Lessard v Whittemore*, unpublished order of the Court of Appeals, entered August 29, 2018 (Docket No. 344653).

[3] Although not at issue on appeal, plaintiffs also alleged a negligence count against defendant Whittemore and an uninsured motorist claim against defendant Home-Owners.

With respect to plaintiff Parler's claim for lost wages, he testified that he had owned his own lawn care and snow removal business, called "D's Lawn Care" and "D's Snow Removal," for at least two or three seasons. He never filed any paperwork with the State of Michigan regarding the business and had never filed a tax return regarding the business.[4] Parler testified that two people worked with him and that he paid them in cash. He stated that he did not have a bank account for himself or the business. He testified that he earned a little over $300 per week. He provided spreadsheets listing the snow removal and lawn care services that he rendered from January 11, 2015, until June 22, 2015. When asked why the listings did not contain any names or specific addresses, Parler testified that his business was a "walk-up" business and that he did not need to know names or addresses.

Regarding replacement services, Parler testified that he moved out of Lessard's residence within one or two weeks after the accident. Parler denied being homeless but testified that he stayed at different places for a few days at a time. He claimed that the address listed on his driver's license was his sister's residence and that he used it as his "mailing address." Parler testified that a family friend, James Alexander, performed replacement services for him by coming to the residences at which Parler temporarily stayed. Parler maintained that Alexander also assisted him by picking up his children and bringing them to Parler and helping Parler prepare meals for his children. Parler testified that when he stayed with his sister, she also provided replacement services. Parler stated that his claim for replacement services covered the period immediately after the accident in December 2015 until the beginning of September 2016.

Home-Owners filed two motions for summary disposition, one for each plaintiff, arguing that because both plaintiffs had engaged in fraudulent conduct with respect to their claims, Lessard's no-fault policy was voided, which precluded plaintiffs from any recovery.

Specifically, with respect to Lessard, Home-Owners argued that the insurance policy was void because she had made numerous false statements that constituted fraud under this Court's decision in *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014). Home-Owners alleged that Lessard made fraudulent misrepresentations regarding alternate names she went by, the residence of Parler, her pre-existing conditions, and her use of pain medication.

And with respect to Parler, Home-Owners noted that for his claim for replacement services, it was "illogical" that someone would come to whichever house at which Parler was staying and perform household services for him. Moreover, Home-Owners asserted that even "if [Parler] had no particular residence and was just crashing at different people's houses, he cannot submit a claim for household services . . . ." And with respect to Parler's claim for wage-loss benefits, Home-Owners argued that his claim was fraudulent because he testified that he never paid any taxes for his income, had no bank accounts for his company, and could not provide a "single address of any home anywhere in the world where he actually performed" lawn or snow service.

---

[4] Additionally, when asked whether he had filed a personal tax return in the previous five years, Parler testified that he had not. Indeed, he did not think he ever had filed a personal tax return.

In a March 3, 2017, opinion and order, the trial court determined that Home-Owners had presented evidence that both plaintiffs had made false statements regarding their medical histories, residency, ownership of vehicles, and employment. Relying on this Court's decision in *Bahri*, the trial court held that plaintiffs could not recover PIP benefits, and the court granted Home-Owners' motions for summary disposition.[5]

Plaintiff Parler filed a motion for reconsideration, arguing that, pursuant to this Court's recent decision in *Shelton v Auto-Owners Ins Co*, 318 Mich App 648; 899 NW2d 744 (2017), an insurer's contractual provision against misrepresentation or fraud cannot be used to bar the no-fault claims of an individual, who, like Parler, is not a party to the contract. The court agreed that Parler, as a nonparty to the insurance policy, was not subject to the policy's exclusionary clause pertaining to fraud. However, the court held that Home-Owners still could rely on fraud as an affirmative defense to a statutory claim for benefits. Thus, because Home-Owners only proved that Parler had made fraudulent statements *with respect to the claims for replacement services and lost wages*, the court granted the motion for reconsideration with respect to Parler's claim for medical benefits and denied the motion with respect to Parler's claims for replacement services and lost wages.

## II. STANDARD OF REVIEW

We review issues of statutory interpretation de novo. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009). We also review de novo a trial court's decision on a motion for summary disposition. *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010). A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. at 304 n 3. When deciding on a motion under this subrule, a court must consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). Importantly, "courts may not resolve factual disputes or determine credibility in ruling on a summary disposition motion." *White v Taylor Distributing Co, Inc*, 275 Mich App 615, 625; 739 NW2d 132 (2007) (quotation marks and citation omitted); see also *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). The motion is properly granted if there are no genuine issues regarding any material fact and the moving party is entitled to judgment as a matter of law. *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

---

[5] The trial court also found more generally that Parler had failed to rebut evidence showing that he had (1) lied about criminal history, in that he denied ever having used another name, while criminal history records showed that he had used the name "Byron Sloss," and (2) that his claim that he had never been convicted of a felony was false, in that he had been convicted of armed robbery. Those falsities, which were noted in the trial court's initial ruling, did not factor in its ruling on rehearing, which is what is at issue on appeal.

## III. DOCKET NO. 338306

Parler argues that the trial court erred when it granted Home-Owners' motion for summary disposition on the basis that Parler's claims for replacement services and wage-loss benefits were fraudulent. We agree.

At the outset, we note that the trial court properly determined, in deciding on Parler's motion for reconsideration, that because Parler was not an insured, he was not subject to the policy's fraud provisions. Because Parler was a passenger in the car at the time of the accident, did not own a car, did not have no-fault insurance, and did not reside with a relative who did have no-fault insurance, he was seeking benefits *directly* under Michigan's no-fault act, MCL 500.3101 *et seq.*, and not through the policy. See *Shelton*, 318 Mich App at 652. At the time of the litigation, MCL 500.3114 stated, in pertinent part, the following:

> (1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. . . .
>
> * * *
>
> (4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the vehicle occupied.
>
> (b) The insurer of the operator of the vehicle occupied.[6]

Thus, because Parler's benefits are governed "solely by statute," the exclusionary provisions, including any fraud exclusionary provision, contained in the policy do not apply "and cannot operate to bar" Parler's claims. *Shelton*, 318 Mich App at 653.

Despite finding that *Shelton* precluded the application of the policy's fraud exclusion provision, the trial court opined that fraud could still constitute an affirmative defense to a claim for statutory benefits. As such, the court granted Home-Owners' motion for summary disposition with respect to Parler's claims for replacement services and wage-loss benefits. The trial court stated:

---

[6] Effective June 11, 2019, this section was amended. 2019 PA 21.

[T]he Court is still convinced that there is no question of fact Home-Owners has established fraud regarding Parler's claim for replacement services and lost wages.

Parler's inability to establish his residence demonstrates fraud as to his claim for replacement services, rendering summary disposition in favor of Home-Owners proper as to that portion of his claim. Parler has also failed to provide any supporting evidence of his claim for lost wages. As such, summary disposition is also appropriate as to that part of his claim.

We agree with Parler that the trial court impermissibly weighed the evidence in making its rulings. As already noted, when ruling on a motion for summary disposition under MCR 2.116(C)(10), a court must consider all the submitted evidence in a light most favorable to the nonmoving party, *Walsh*, 263 Mich App at 621, and a court may not assess credibility, *White*, 275 Mich App at 625. Thus, in order for Home-Owners' motion to have been properly granted, there must have been no dispute in the evidence that Parler committed fraud related to his claims.

## A. REPLACEMENT SERVICES

Regarding Parler's claim for replacement services, in its motion for summary disposition, Home-Owners specifically relied on the following from Parler's deposition:

*Q*. So this friend, James Alexander, how often did he help you?

*A*. Well, when I first moved out and I was moving around a lot, he came, wherever I was at, you know.

*Q*. Every day?

*A*. Almost every day. . . .

* * *

*Q*. Okay. Let me clarify a few things. You didn't have a specific place where you lived after the accident, right?

*A*. No.

*Q*. Okay. So why would someone need to clean a place if it wasn't your place, after the accident?

*A*. Because if they was allowing me to stay there in that two to three day period.

*Q*. They would expect you to clean it for those two to three days?

*A*. Yeah. If they allow me to have my kids come over [to] their house, trample through it, it had to be cleaned up, it had to be fixed.

-6-

The trial court presumably also relied on this testimony and ruled that "Parler's inability to establish his residence demonstrates fraud as to his claim for replacement services." Apparently, the court was reasoning that because Parler did not identify any particular residence at which he stayed after moving out of Lessard's home sometime after the accident, it was proof-positive that his testimony was false or fraudulent. But whether Parler identified which dates he spent at certain places after moving out of Lessard's place does not necessarily show that his testimony was knowingly false. While a jury ultimately may find Parler's testimony not credible, there is nothing in the record to show that his testimony necessarily was knowingly untrue.

Moreover, to the extent the trial court's ruling could be viewed as applying a black-letter rule that the recovery of replacement services is prohibited if the services were not provided at a traditional "residence" (or alternatively, that recovery is limited to situations in which the services were provided at the same location at which the claimant resided before the accident), that interpretation is not supported by the plain language of the no-fault act. MCL 500.3107(1)(a)(c) defines expenses for such replacement services as

> [e]xpenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent. [See also *Johnson v Recca*, 492 Mich 169, 174-175; 821 NW2d 520 (2012); *In re Carroll*, 300 Mich App 152, 160-161; 832 NW2d 276 (2013).]

Therefore, all that is required to be a valid, recoverable replacement expense is that the expense be reasonably incurred in obtaining ordinary and necessary services which, if Parler had not been injured, he would have performed himself. Neither the trial court nor Home-Owners has identified any authority that requires the services to have been supplied at the same "residence" the claimant had before the accident. Indeed, the statute does not require these services to have been rendered at any particular location; instead, the replacement-services benefit simply applies "to all manner of ordinary or mundane household services that the injured person might have performed." *In re Carroll*, 300 Mich App at 161. Thus, if a plaintiff incurred expenses for "ordinary and mundane" services that he would have performed, even while temporarily staying at someone else's home, then those expenses would be compensable. Accordingly, the trial court erred when it determined that Parler's testimony necessarily constituted fraud which precluded his claims for replacement services.

## B. LOST WAGES

The trial court likewise erred when it ruled that there was no question of fact that Parler had engaged in fraud with respect to his claim for lost wages. The court found that fraud existed because Parler had "failed to provide any supporting evidence of his claim for lost wages." The court relied on the fact that despite Parler claiming that his source of income was from his snow removal and landscaping business, Parler testified that he earned some money by "hustling." The court apparently found that these statements were contradictory and therefore constituted fraud. The pertinent discussion at the deposition is as follows:

-7-

*Q*.  Where would you get the money to do this [go to the clubs], though?

*A*.  Wherever, you know, it's a hustle everywhere.  Everybody grew up different.  It's a hustle everywhere.

*Q*.  What were you hustling?

*A*.  What do you mean?

*Q*.  You just said you were hustling.

*A*.  If someone said, hey, man, I give you $50 to move a couch, I do it.  If you want to make [$]25 driving me from Port Huron to Mount Clemens.  I'm not saying you got to be lazy, but if you want to make a couple dollars, you can.

Home-Owners' theory was that because Parler had admitted that his source of income was from "hustling," his claim for lost wages related to a snow removal and landscaping business must be fraudulent.  However, reasonable minds could differ on the scope of this statement because "hustling" can mean a "side" income, in addition to any primary source.  See Angela Stringfellow, *What Is a Side Hustle?* <https://www.wonolo.com/blog/what-is-a-side-hustle> (accessed August 15, 2019) ("A side hustle is any type of employment undertaken in addition to one's full-time job.").  While Parler may have relied on this side source of income to fund his clubbing activities, it does not mean that this was his primary, let alone sole, source of income.  Indeed, immediately before this exchange, Parler had talked about his lawn business.  Thus, it is a stretch to view this reference to "hustling" as a clear repudiation of his prior testimony, particularly when we interpret Parler's testimony in the light most favorable to him, as the nonmovant, as we are required to in the present context.

The trial court also relied on the fact that Parler "failed to provide any supporting evidence of his claim for lost wages."  However, Parler did not *need* documentary evidence, as his proffered testimony established that he had a business and made approximately $300 per week from that business prior to the accident.  The fact that Parler never filed any tax documents nor made any filing with the state regarding his business would not preclude a finding that he actually engaged in this business.  As with Parler's claim for replacement services, a jury ultimately may not credit Parler's testimony, but in deciding a motion for summary disposition, a court cannot engage in such credibility determinations.  *White*, 275 Mich App at 625.

Therefore, Home-Owners failed to show that Parler's claim for lost wages was fraudulent as a matter of law, and the trial court erred when it granted Home-Owners' motion for summary disposition on this basis.[7]

---

[7] Parler also argues that assuming any fraud did exist, the no-fault act does not allow for any remedy other than what the statue provides.  See MCL 500.3148(2) (providing that an insurer

Lessard argues on appeal that the trial court erred when it determined that there was no question of fact that Lessard had engaged in fraudulent activity with respect to her claims for PIP benefits. We disagree.

Initially, unlike Parler, Lessard was a party to the insurance contract and therefore was bound to its terms. See MCL 500.3114(1); *Shelton*, 318 Mich App at 652. The policy contains the following fraud provision:

> We will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to procurement of this policy or to any occurrence for which coverage is sought. [Emphasis omitted.]

This Court in *Bahri*, 308 Mich App at 424-425, addressed what a "fraudulent statement" means:

> "To void a policy because the insured has willfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it." [Citation omitted.]

Furthermore, the false statement must have been material, i.e., "reasonably relevant to the insured's investigation of a claim." *Id*. at 425 (quotation marks and citation omitted).

Here, with minimal analysis, the trial court granted Home-Owners' motion for summary disposition because it determined that Lessard had made many fraudulent statements, including statements related to other names she has gone by, Parler's address, Lessard's pre-existing conditions, and the identity of medications she was taking at the time of the accident.

### 1. OTHER NAMES

In an answer to interrogatories, Lessard stated that she "has been known by the name Holly Wood." But at her deposition, Lessard initially denied that she had been known by any other names. Later in her deposition, however, she admitted that "[t]here's a possibility that I could have had an alternative name." She tried to explain that although *she* never personally used the name "Holly Wood," she conceded that others have called her that. Thus, reasonable minds could differ as to whether Lessard's failure to initially respond at the deposition consistently with her answer to the interrogatories was a *knowing* misrepresentation made with

---

can recover attorney fees associated with a fraudulent claim). But because we have found that the evidence did not show that fraud conclusively existed, we decline to reach that issue.

the intent to have Home-Owners act on that misinformation or whether she made the initial denial because in her mind, she never went by that name. Indeed, with her already having provided the answer of "Holly Wood" in her answers to interrogatories, it is difficult to imagine that this latter statement at her deposition was meant to make Home-Owners act on this statement. Thus, there is a question of fact regarding Lessard's intent related to her deposition statement, and the trial court erred in granting summary disposition on this basis.

## 2. PARLER'S ADDRESS

Regarding Parler's address, there was no evidence that Lessard made any intentional false statements. Indeed, her testimony was consistent with Parler's: Parler moved out of Lessard's residence a short time after the accident. The trial court apparently relied on the fact that Parler's driver's license listed his sister's address. But that fact is insufficient to show that Parler in fact could not have been living with Lessard at the time of the accident. While Home-Owners opines that this is a blatant attempt to double collect PIP replacement-services benefits, there is no other evidence to so emphatically refute Lessard's and Parler's testimony that no reasonable person could believe them, see *West*, 469 Mich at 183; in the absence of proof that plaintiffs' evidence was so inherently lacking in credibility that a jury could not accept it, courts may not weigh credibility when ruling on a motion for summary disposition, *White*, 275 Mich App at 625.

## 3. PAIN MEDICATION

The trial court apparently also adopted Home-Owners' argument that Lessard had lied about her prior use of pain medication. The court favorably recited Home-Owners' allegation that Lessard had testified that she had not taken any pain medication before going to the emergency room after the accident, but at that hospital visit, she tested positive for "opiates and benzodiazepine." The trial court implicitly found that these test results showed that Lessard had not stated the truth with regard to having taken pain medication before going to the hospital. However, there is nothing in the record, by way of expert testimony or otherwise, that shows that these test results stand for the proposition that Lessard had indeed taken "pain medication" sometime before going to the hospital. Nothing in the record explains what the significance of the presence of "benzodiazepine" is. It does not appear to be what would typically be considered pain medication. See RxList, *Benzodiazepines* <https://www.rxlist.com/benzodiazepines/drugs-condition.htm> (accessed August 15, 2019) ("Benzodiazepines are a class of drugs primarily used for treating anxiety . . . ."). On the other hand, it is fairly commonly understood that "opiates" can include pain medication. However, the test results in this case clearly state that with respect to the particular screening for opiates, "The opiate component of this drug screen is intended to detect street heroin and its metabolite, morphine. This opiate component will not detect pharmacologic concentrations of oxycodone and other pain management medications." Therefore, on its face, the screening cannot be used to show conclusively that Lessard took "pain medication" prior to going to the hospital and subsequently lied about it.

## 4. PRE-EXISTING CONDITIONS

The trial court also adopted Home-Owners' position that Lessard had made fraudulent misrepresentations when she testified that she did not have any head, neck, or back problems

"before the accident" and when she stated that she had not had any knee problems in the five years preceding the December 21, 2015 accident. The pertinent testimony was as follows:

*Q.* Okay. What parts of your body did you injure in this accident?

*A.* My neck, my head, my back, and my knee.

*Q.* Okay. And you didn't have any problems, you didn't have any neck problems before the accident?

*A.* No.

*Q.* And you didn't have any back problems before the accident?

*A.* No.

*Q.* And you didn't have any knee problems before the accident?

*A.* I injured it a long time ago.

*Q.* A long time ago, more then five years ago?

*A.* Yes.

*Q.* You didn't have any problems in the five years before the accident?

*A.* No.

*Q.* Okay. So in the five years before the accident, you had no neck problems, no back problems, no knee problems?

*A.* Mm-hmm.

*Q.* Fair?

*A.* Yes.

*Q.* Did you have any head problems before the accident?

*A.* No.

*Q.* Did you ever treat for like headaches or issues like that before the accident?

*A.* No.

In support of its contention that Lessard's testimony was fraudulent, Home-Owners submitted a medical report dated April 17, 2013, which showed that Lessard had presented to her

doctor "for anxiety medication review and right knee pain." With respect to the knee pain, the report stated that Lessard had claimed that the pain "occurs constantly." Thus, the record does indicate that Lessard's statement about not having any knee pain or problems during the five years preceding the December 2015 accident was not true.

In support of its contention that Lessard had lied about having head problems prior to the accident, Home-Owners submitted a hospital record from 2009, which showed that Lessard had complained of headache, neck pain, and back pain. But whether Lessard complained of any such pain in 2009 was irrelevant, as her deposition testimony was focused on the five-year period leading up to the December 2015 accident. In other words, this 2009 hospital record does nothing to support or refute her testimony that she had no pain in the five years preceding the accident. Therefore, to the extent the trial court relied on this "proof," it erred.

Home-Owners also relied on a medical record from February 2014, which shows that Lessard had presented to the emergency room with the "chief complaint of increased anterior chest pain." While the purpose of Lessard's visit to the hospital was related to chest pain, the report stated that Lessard had "a significant past medical history for anxiety, GERD,[8] asthma, migraine, [and] chronic back pain." The report also noted that Lessard claimed that she has had "increased lower back pain over [the] last week after shoveling the snow." However, that same report states, "[Lessard] denies recent . . . back pain, . . . headaches or visual changes, or any other current symptoms." Therefore, reasonable minds could conclude that while Lessard previously had a history of headaches and back pain, that pain was not present in February 2014, which was within the pertinent five-year period. Accordingly, to the extent the trial court relied on the February 2014 report in granting Home-Owners' motion for summary disposition, it erred.

Lastly, the trial court appears to have relied on two visits Lessard had with medical service providers in August 2015 and September 2015. At the August 2015 visit, Lessard complained of "breast problems," mood disorders, and insomnia/sleep problems. A review of the record does not show that Lessard had complained of any headaches, back pain, or knee pain. Thus, the relevance of this record is not readily apparent. On September 29, 2015, Lessard had an MRI conducted of her brain. While the report mentions that "[t]he patient presents with abnormal sleeping and eating patterns for the past year," it also states that the reason for the exam was "frequent headaches." Because the MRI was conducted less than three months before the accident, it is evidence that Lessard had indeed suffered from headaches within the five-year period preceding the accident.

Thus, from the documents the trial court relied on, there was evidence that supported Home-Owners' contention that Lessard had made misrepresentations regarding having no pre-existing conditions: the April 2013 medical record, which showed that Lessard had suffered

---

[8] GERD is an acronym for gastroesophageal reflux disease. See WebMD, *Gastroesophageal Reflux Disease (GERD)* <https://www.webmd.com/heartburn-gerd/guide/reflux-disease-gerd-1#1> (accessed August 15, 2019).

from right knee pain, and the September 2015 MRI report, which indicated that Lessard had suffered from "frequent headaches."

Additionally, although not cited by the trial court, there was other evidence Home-Owners submitted that shows that Lessard had suffered from knee pain not only before the accident, but within the five years preceding the accident. First, a medical progress report, issued a couple months after the accident, stated that "[t]he issue in [Lessard's] right knee diagnosed with patellar tendonitis back in 2007 was due to a car accident[;] however . . . *the pain has changed* significantly in character since this most recent accident." Importantly, this February 2016 report describes her pain as *changing*, which shows that the pain *did exist before the accident*, albeit in a different character. Next, Home-Owners submitted a medical record from November 27, 2012, which shows Lessard complaining of knee pain that had been "worse" since kneeling down three weeks prior to the appointment. Not only does this report show that Lessard had knee pain in November 2012, thereby taking place within five years of the December 2015 motor-vehicle accident, it shows that she *also* had knee pain prior to her kneeling incident in early November 2012; this November 2012 report uses the word "worse" to describe Lessard's level of knee pain even before the kneeling incident, thereby indicating that the pain had been ongoing. In other words, if there had been no knee pain prior to the kneeling incident, the report would have classified this reported pain as "new" or something to that effect instead of a "worse[ning]" of the pain. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "worse" as "of more inferior quality, value, or condition").

Given this evidence, it is clear that Home-Owners presented sufficient evidence to prove that Lessard had made material misrepresentations regarding the pain in her knee. The evidence shows that Lessard's knee caused her pain in the five years leading up to the December 2015 accident, and she misrepresented that fact when she testified there was no knee pain during that period. Further, it is not plausible that Lessard simply had forgotten that she had knee pain prior to the accident. The nature of the pain, including its lengthy duration, and the apparent impact on Lessard's life makes it clear that her false statements were made knowingly and with the intent to deceive Home-Owners. As in *Bahri*, "[r]easonable minds could not differ in light of this clear evidence that plaintiff made fraudulent representations for purposes of recovering PIP benefits." *Bahri*, 308 Mich App at 426. As such, the terms of the policy precluded Lessard from recovering any PIP benefits, and the trial court properly granted Home-Owners' motion for summary disposition. The fact that the evidence may not have conclusively proven that Lessard's other representations were not fraudulent does not affect the outcome: the policy only requires one instance of fraud to void the policy.

## V. CONCLUSION

In Docket No. 338306, because a question of fact remains regarding whether Parler had committed fraud with respect to his claims for replacement services and wage-loss benefits, we reverse the trial court's grant of summary disposition in favor of Home-Owners. Parler, as the prevailing party, may tax costs pursuant to MCR 7.219.

In Docket No. 344653, because there is no question of fact that Lessard had made fraudulent statements in connection with her claim for PIP benefits, the policy's exclusionary

-13-

language bars her recovery, and we affirm the trial court's grant of summary disposition in favor of Home-Owners.  Home-Owners, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford