*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAMONE JOHNSON,

       Plaintiff-Appellee,

v

SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION, also known as
SMART,

       Defendant-Appellant,

and

RONALD PRESSLEY and SHANE WEBSTER,

       Defendants.

UNPUBLISHED
February 16, 2023

No.  359478
Wayne Circuit Court
LC No.  19-017397-NI

Before:  CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

In this negligence action implicating the governmental tort liability act (GTLA), defendant Suburban Mobility Authority For Regional Transportation, (SMART), appeals by right the trial court's order denying SMART's motion for summary disposition under MCR 2.116(C)(7) and (C)(10).  Finding no errors warranting reversal, we affirm.

## I.  BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff was a passenger on a SMART bus driven by defendant, Ronald Pressley, during rush-hour traffic in Summer 2018.  Defendant, Shane Webster, exited a parking garage on Larned Street in Detroit, Michigan while driving a Chevy Cruze.  Webster passed Pressley's bus in the left lane and activated his turn signal.  Webster believed Pressley saw the turn signal, slowed down, and impliedly offered Webster the chance to change lanes.  A video from the bus showed Pressley appeared to notice the turn signal and used his horn.  Webster changed lanes in front of the bus, traffic in front of Webster suddenly stopped, Webster slammed on his brakes, and Pressley did the same in a failed attempt to avoid

-1-

hitting the Cruze. Inside the bus, plaintiff flew forward, struck her head, and then was thrown back into her seat. She was taken to the hospital by an ambulance to treat her injuries.

Plaintiff sued SMART, claiming Pressley negligently operated the SMART bus, which caused her injuries. SMART moved for summary disposition under MCR 2.116(C)(7) (governmental immunity) and (C)(10) (no genuine issue of material fact). SMART argued it was entitled to summary disposition because there was no question of fact regarding Pressley's negligence. Plaintiff disagreed, arguing there was a presumption of negligence because Pressley's bus rear ended Webster's Cruze. Plaintiff also asserted SMART's various arguments hoping to escape the presumption and be awarded summary disposition lacked merit. After considering the briefs and oral arguments, the trial court agreed with plaintiff and denied SMART's motion. This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews de novo questions of law regarding governmental immunity," and "also reviews de novo motions for summary disposition under MCR 2.116(C)(7)." *Tellin v Forsyth Twp*, 291 Mich App 692, 698; 806 NW2d 359 (2011). "Under MCR 2.116(C)(7), all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 414; 875 NW2d 242 (2015) (quotation marks and citation omitted). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010). "However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*.

"This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). "This Court also reviews de novo issues of statutory interpretation." *Smith v Town & Country Props II, Inc*, 338 Mich App 462, 473; 980 NW2d 131 (2021).

## III. DISCUSSION

SMART argues it was entitled to immunity from suit under the GTLA because Pressley did not negligently operate the SMART bus. "Under the GTLA, governmental agencies are broadly shielded from tort liability absent an exception." *Tyrrell v Univ of Mich*, 335 Mich App 254, 263; 966 NW2d 219 (2020), citing MCL 691.1407(1). "It is well established that governmental immunity is not an affirmative defense, but is instead a characteristic of government." *West v Dep't of Nat'l Resources*, 333 Mich App 186, 191; 963 NW2d 602 (2020) (quotation marks and citation omitted). "In order to assert a viable claim

against a governmental agency, a plaintiff must plead facts establishing that an exception to governmental immunity applies to his or her claim." *Wood v City of Detroit*, 323 Mich App 416, 420; 917 NW2d 709 (2018). "One such statutory exception is the so-called motor-vehicle exception, which provides that governmental agencies remain 'liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . .' " *West*, 333 Mich App at 191, quoting MCL 691.1405.[1]

The parties agree SMART is a governmental agency, Pressley was its employee, and SMART owned the bus Pressley was driving for purposes of MCL 691.1405. Thus, the only remaining issue is whether there was "negligent operation" of the bus by Pressley. MCL 691.1405. "To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 552; 942 NW2d 696 (2019) (quotation marks and citation omitted).

SMART first contends it was entitled to summary disposition because the duty sought to be imposed by plaintiff was too great. In a recent decision, we restated the duty existing between common carriers and their passengers:

> With respect to common carriers, our Supreme Court in *Frederick v Detroit*, 370 Mich 425, 437-438; 121 NW2d 918 (1963), clarified some confusion in the law that had existed regarding the duty of care owed by such carriers:
>
> > Accordingly, when a duty arises as a matter of law between a carrier and its passengers, it is the common law duty of due care and it may be defined simply as the duty to exercise such diligence as would be exercised in the circumstances by a reasonably prudent carrier. It then becomes the function of the jury to determine from the evidence what action, if any, should have been taken or omitted in order to measure up to the standard of a reasonably prudent carrier in the same circumstances. [*Anderson v Transdev Servs, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356541); slip op at 4.]

Despite the contention from SMART to the contrary, there appears to be no legitimate dispute about the duty owed by SMART and Pressley to plaintiff. Plaintiff, for her part, never claims there is some increased duty she was owed in this case. She believes she was owed the duty of a reasonably prudent common carrier under the circumstances, which is correct. *Id*. SMART appears to confuse the question of "duty" with that of whether the duty was breached. For example, SMART insists plaintiff alleges that SMART and Pressley had a duty to foresee and preemptively react to Webster's decision to unexpectedly change lanes. Plaintiff makes no such argument. Instead, plaintiff argues a reasonably

---

[1] MCL 691.1405 states:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . .

prudent common carrier, presented with the same circumstances as Pressley, would have recognized Webster's approach, observed his turn signal, began braking right away, and avoided the accident. SMART, on the other hand, believes Pressley's actions were reasonable. This is an argument about breach, not duty. Consequently, SMART's argument regarding the duty owed to plaintiff lacks merit. Both parties agree the proper duty is stated in *Anderson*, ___ Mich App at ___; slip op at 4, as quoted above.

SMART next argues there was no genuine issue of material fact that Pressley did not breach his duty as a reasonably prudent common carrier. SMART focuses on Pressley's alleged compliance with statutes regarding safe driving habits. "When construing a statute, this Court's primary goal is to give effect to the intent of the Legislature. We begin by construing the language of the statute itself. When the language is unambiguous, we give the words their plain meaning and apply the statute as written." *Rowland v Washtenaw County Rd Comm'n*, 477 Mich 197, 202; 731 NW2d 41 (2007). "We must examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Ally Fin Inc v State Treasurer*, 502 Mich 484, 493; 918 NW2d 662 (2018) (quotation marks and citation omitted). "If the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted." *Deruiter v Byron Twp*, 325 Mich App 275, 283; 926 NW2d 268 (2018), rev'd on other grounds 505 Mich 130 (2020).

In support of its argument, SMART cites MCL 257.627(1), which states: "An individual shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead." SMART notes Pressley was driving in the second lane of Larned Street at a speed that would have allowed Pressley to stop the bus before hitting the white Hyundai in front of the bus. There appears to be no dispute Pressley operated his bus at a safe distance behind the white Hyundai. Indeed, plaintiff makes no argument regarding the bus's distance from the white Hyundai. Instead, plaintiff focuses the inquiry on Pressley's response to Webster's Cruze appearing on the left side of the bus, putting on the turn signal, changing lanes, and suddenly stopping.

SMART insists the fact Pressley was traveling at a safe distance from the white Hyundai, made him the "favored driver" in the situation. Thus, SMART argues, Pressley was entitled to assume his right-of-way would not be obstructed by another driver. SMART is correct that it is generally true a favored driver "is entitled to assume that subordinate drivers will yield him the right of way," and "is not bound to anticipate unlawful or negligent acts on their part." *McGuire v Rabaut*, 354 Mich 230, 234; 92 NW2d 299 (1958). However, the Michigan Supreme Court has been clear that the right afforded to a favored driver is not absolute: "It remains his duty to exercise reasonable care under the circumstances." *Id.* at 235. As a result, contrary to SMART's argument, Pressley's position as the favored driver did not permit him to "charge blindly through" traffic "on the theory that such is his 'right' simply because he is the favored driver." See *id.* Plaintiff, of course, asserts Pressley did not "exercise reasonable care under the circumstances" in the present case. See *id.* Therefore, the trial court was correct to determine SMART was not entitled to summary disposition solely on the basis of being the "favored driver."

In asserting Pressley operated the SMART bus negligently, plaintiff notes there is a statutory presumption of negligence because Pressley's bus rear ended Webster's Cruze. The statute at issue, MCL 257.402(a), states:

> In any action, in any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another

vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator.

As explained by the Michigan Supreme Court, "[u]nder the rear-end collision statute a rebuttable presumption arises that the offending driver is *prima facie* guilty of negligence." *Vander Laan v Miedema*, 385 Mich 226, 231; 188 NW2d 564 (1971). "A presumption of negligence 'may be rebutted with a showing of an adequate excuse or justification under the circumstances[.]' " *White v Taylor Distrib Co, Inc*, 275 Mich App 615, 621; 739 NW2d 132 (2007), aff'd 482 Mich 136 (2008), quoting *Farmer v Christensen*, 229 Mich App 417, 420; 581 NW2d 807 (1998) (alteration in *White*).

SMART contends this presumption should not apply because Pressley's bus never "overtook" Webster's Cruze. The statute does not define the term "overtook." "[I]n order to accord undefined statutory terms their plain and ordinary meanings, a court may consult dictionary definitions when terms are not expressly defined by a statute." *West St Joseph Prop, LLC v Delta Twp*, 338 Mich App 522, 534; ___ NW2d ___ (2021) (quotation marks, citation and alteration omitted). "Overtook" is past tense for "overtake," which *Merriam-Webster's Collegiate Dictionary* (11th ed) defines as, "to catch up with," "to catch up with and pass by," or "to come upon suddenly."

SMART, for its part, fails to fully explain its position regarding application of the statute and how it believes the word "overtook" should be interpreted. The video and all of the witnesses agree the SMART bus and Webster's Cruze were traveling in the same direction—east on Larned Street—before the accident took place. Right before the accident occurred, Webster's Cruze was in front of Pressley's SMART bus. Although it happened quickly, the video and the witnesses also show Pressley's bus struck the rear end of Webster's Cruze. Specifically, the bike rack of the SMART bus, which is attached to its front, struck the rear end of Webster's Cruze. Considering both vehicles were traveling in the same direction at the time of the collision, Pressley's SMART bus was behind Webster's Cruze before the collision, and then the bus caught up with, or suddenly came upon the Cruze, the record plainly supports the conclusion the SMART bus "overtook" Webster's Cruze in the second lane of Larned Street. As succinctly stated by this Court, "because [the first party]'s truck undisputedly struck the rear of [the second party]'s vehicle, a rebuttable presumption arose that [the first party] was negligent with regard to the collision." *White*, 275 Mich App at 621. Thus, contrary to the argument by SMART, the rebuttable presumption required by MCL 257.402(a) exists in this case. *White*, 275 Mich App at 621.

SMART attempts to escape this presumption by arguing an exception applies. As stated above, SMART is permitted to present evidence to rebut the presumption under MCL 257.402(a). One manner of rebutting the presumption at issue is by showing the presumably negligent driver faced a sudden emergency. *White*, 275 Mich App at 623. In *White*, we provided a thorough explanation of the caselaw regarding the sudden-emergency doctrine:

> The sudden-emergency doctrine was explained by our Supreme Court in *Socony Vacuum Oil Co v Marvin*, 313 Mich 528, 546; 21 NW2d 841 (1946):
>
> > "One who suddenly finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the impending danger is not guilty of negligence if he fails to adopt what

subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence." [Quoting Huddy on Automobiles (8th ed), p 359.]

To come within the purview of the sudden-emergency doctrine, the circumstances surrounding the accident must present a situation that is unusual or unsuspected. *Vander Laan*, 385 Mich at 232, citing *Barringer v Arnold*, 358 Mich 594, 599; 101 NW2d 365 (1960). "[I]t is essential that the potential peril had not been in clear view for any significant length of time[.]" *Vander Laan*, 385 Mich at 232. *Szymborski* [*v Slatina*, 386 Mich 339, 341; 192 NW2d 213 (1971),] addressed the sudden-emergency doctrine in the context of the rear-end presumption. The Court stated that the sudden-emergency doctrine is a logical extension of the "reasonably prudent person" standard, with the question being whether the defendant acted as a reasonably prudent person when facing the emergency, giving consideration to all the circumstances surrounding the accident. *Szymborski*, 386 Mich at 341; see also *Baker v Alt*, 374 Mich 492, 496; 132 NW2d 614 (1965) ("In actuality, the doctrine of 'sudden emergency' is nothing but a logical extension of the 'reasonably prudent person' rule."); *Woiknoris v Woirol*, 70 Mich App 237, 240-241; 245 NW2d 579 (1976) ("A sudden emergency is simply one of the circumstances to be considered in determining whether an act or conduct was negligent."). Accordingly, when a person faces a sudden emergency, it does not create an invitation to act in a negligent manner; rather, due consideration is given to the circumstances involved. While a person confronted by a sudden emergency is not guilty of negligence if he or she fails to adopt what subsequently and upon reflection may appear to have been a better method, *Socony Vacuum*, 313 Mich at 546, this principle, given the cases cited above, necessarily comes into play when the person chooses one reasonable, non-negligent course of action over another reasonable, non-negligent course of action that would have resulted in a more favorable outcome when viewed in hindsight. [*White*, 275 Mich App at 622-623.]

SMART contends the sudden emergency in this case occurred when Webster suddenly changed lanes and slammed on his brakes. Inherent in this argument is the contention that Pressley did not see Webster in sufficient time to stop the bus without striking Webster's Cruze. SMART essentially asks us to watch the video, view it in a manner that most supports SMART's position, and ignore the testimony of Webster. Because we must consider the evidence in the light most favorable to plaintiff as the nonmoving party, SMART's argument lacks merit. See *Maiden*, 461 Mich at 120.

The video from the SMART bus undoubtedly showed the accident happened within a matter of seconds. However, it also shows Webster's Cruze driving on the left side of the bus, in the first lane, and eventually getting in front of the bus. Roger Allen, plaintiff's proposed expert regarding bus driving, stated a bus driver with a commercial driver's license, like Pressley, should use his mirrors to stay aware of the traffic around him. Once Webster got in front of the bus, he utilized his turn signal to indicate his intent to switch lanes. At about the time Webster did so, the video shows Pressley hitting the bus's horn. While Pressley testified he did not see Webster's turn signal, the record in the light most favorable to plaintiff allows for an inference he did see the turn signal. After all, Pressley honked the horn of the bus, apparently as a warning to Webster not to change lanes. Webster also testified he made eye contact with Pressley before switching lanes, believed Pressley was slowing the bus to allow Webster into the second lane, and thought Pressley had impliedly encouraged Webster to change lanes. Lieutenant Timothy Abbo,

plaintiff's proposed expert accident reconstructionist, averred Pressley would have time to safely stop the bus if he had begun braking when he realized Webster intended to change lanes.

The facts just espoused, which have been stated in a light most favorable to plaintiff, establishes two problems for SMART's argument regarding the sudden-emergency doctrine. First, an "essential" part of the doctrine is "that the potential peril had not been in clear view for any significant length of time . . . ." *Vander Laan*, 385 Mich at 232. In the present case, there is an issue of material fact regarding whether the potential peril related to Webster's Cruze had been in Pressley's "clear view for any significant length of time . . . ." *Id*. Pertinently, the evidence would allow for a reasonable juror to determine Pressley saw Webster's Cruze as it passed the SMART bus and the turn signal became illuminated. Further, the record also supported that, if Pressley had reacted immediately by braking, he would have had time to stop before striking the Cruze. Thus, for purposes of this case, the "significant length of time" involved considerations of whether Pressley had time to avoid the collision if he acted in a reasonable manner. As established by Lieutenant Abbo, there was at least a question of fact whether Pressley saw the potential peril presented by Webster's Cruze in time to stop safely. Consequently, for this reason alone, there was a question of fact whether SMART could rebut the presumption of negligence by relying on the sudden-emergency doctrine.

The second problem with SMART's reliance on the sudden-emergency doctrine involves allegations related to Pressley's negligence. As noted above, the sudden-emergency doctrine does not apply when "the emergency in which [the driver] finds himself is brought about by his own negligence." *White*, 275 Mich App at 622 (quotation marks and citation omitted). In the present case, plaintiff has presented evidence creating a genuine question of material fact whether the alleged sudden emergency faced by Pressley was caused by his own negligence. Specifically, the affidavit from Allen stated that a reasonably prudent common carrier would be aware of his surroundings by using his mirrors. Further, Lieutenant Abbo averred it was unreasonable for Pressley to use his horn instead of beginning to brake immediately. Finally, Webster testified Pressley had given Webster several indications there was adequate room to change lanes. Assuming Webster's testimony is true, which this Court must for purposes of this appeal, a jury could infer Pressley acted negligently by indicating to Webster he could change lanes when it actually was not safe. Thus, because there also was a question of fact whether the sudden emergency allegedly faced by Pressley was created by his own negligence of being unaware of his surroundings, honking his horn instead of braking, and unreasonably indicating to Webster he could change lanes, a reasonable juror could conclude the sudden-emergency doctrine did not apply. *Id*. Therefore, SMART's reliance on the sudden-emergency doctrine did not entitle it to summary disposition. *Id*.

Even ignoring the two factual disputes inherent in application of the doctrine, SMART's argument also suffers because it has failed to establish the doctrine actually should apply at all in this case. As noted above, the doctrine applies only when "the circumstances surrounding the accident [] present a situation that is unusual or unsuspected." *Id*., citing *Vander Laan*, 385 Mich at 232. "The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist. Such an event is typically associated with a phenomenon of nature." *Id*. The Court in *Vander Laan* specifically noted a case involving a blizzard in the Upper Peninsula as "unusual" as intended by the sudden-emergency doctrine. *Id*. " 'Unsuspected' on the other hand connotes a potential peril within the everyday movement of traffic. To come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clearview for any significant length of time, and was totally unexpected." *Id*. As an example of a situation determined to be unsuspected, the Court cited a case involving "a plaintiff's car which had stopped while pushing a disabled

vehicle on the highway." *Id*. The Court explained the other driver could not have seen the vehicle until it crested a hill, could not tell there was some peril until it was too close to avoid colliding with the other car, and the stopped car had not illuminated any warning lights while driving in surrounding darkness. *Id*.

The facts of this case show the accident occurred during a sunny, clear day in the summer. The traffic was heavy, but such was expected because it was Friday at about 4:45 p.m. Considering there was no evidence of "a phenomenon of nature," but instead, showed the "everyday traffic routine confronting the motorist," the record suggests the circumstances were not unusual as meant under the sudden-emergency doctrine. See *id*. Moreover, there was at least a question of fact regarding whether a jury would find the circumstances were "unsuspected." As discussed above, there was evidence presented indicating Pressley saw Webster's turn signal in time for the bus to safely stop, and Pressley may have even indicated to Webster that he could switch lanes. This is plainly different from *Vander Laan*, 385 Mich at 232, where the driver did not have time to stop and the other car had not signaled the approaching emergent circumstance in any manner. As noted, Webster did signal he was about to switch lanes, and Lieutenant Abbo claimed Pressley had time to safely stop the bus if he acted reasonably. Moreover, considering the accident occurred during rush-hour traffic in Detroit, a reasonable juror could undoubtedly find that a car suddenly switching lanes and braking is not "totally unexpected" for purposes of applying the sudden-emergency doctrine. *Id*. Thus, for this reason as well, SMART was not entitled to summary disposition on the basis of the sudden-emergency doctrine.

Additionally, as noted by plaintiff, while the sudden-emergency doctrine could allow for SMART to rebut the presumption of negligence required by MCL 257.402(a), there is no legal support to conclude it could entirely extinguish the presumption to the extent summary disposition would be warranted. Interestingly, SMART has identified caselaw apparently allowing a trial court and appellate courts to assess credibility of evidence and decide to entirely remove a legal presumption. "When the trial court undertakes to eliminate from the jury's consideration a statutory presumption as a matter of law, at the very least there must be clear, positive, and credible evidence opposing the presumption." *White*, 275 Mich App at 621. However, "[i]f the evidence is less than clear, positive and credible, the question whether such presumption has been overcome should be settled—on proper instruction of course—in the jury room." *Szymborski*, 386 Mich at 341 (quotation marks and citation omitted).

SMART contends such "clear, positive, and credible" evidence exists in this case in the form of the video from the bus. *White*, 275 Mich App at 621. However, for all of the reasons set forth above, the video does not undisputedly establish the legal presumption required by MCL 257.402(a). SMART's reliance on the sudden-emergency doctrine does little more than create a question of fact for a potential jury. It is not, then, "clear, positive, and credible" evidence that would have allowed the trial court to extinguish the presumption of negligence and award summary disposition in favor of SMART. *Szymborski*, 386 Mich at 341.[2]

SMART's last argument for reversal centers on the issue of causation. In any negligence case, a plaintiff must establish that the defendant's negligence was the factual and legal cause of the plaintiff's injuries. *Ray v Swager*, 501 Mich 52, 65; 903 NW2d 366 (2017). While these concepts are often

---

[2] Considering the issues with application of the sudden-emergency doctrine discussed in this analysis, i.e., whether this could possibly be a sudden emergency, we decline to address whether the trial court should instruct the jury regarding the exception during a trial.

conflated, factual causation generally "requires showing that 'but for' the defendant's actions, the plaintiff's injury would have not occurred." *Id*. at 64 (quotation marks and citation omitted). Proximate causation, or legal causation, asks a different question—"whether it was foreseeable that the defendant's conduct could result in harm to the victim." *Id*. at 65. "[A] court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries." *Id*. at 64 (quotation marks and citation omitted).

Under the GTLA's motor-vehicle exception, a governmental agency is liable for a plaintiff's injuries "*resulting from* the negligent operation" of a motor vehicle by a governmental employee. MCL 691.1405 (emphasis added). In narrowly construing the phrase "resulting from," our Supreme Court expressly declined to import the 'but for' test for factual causation into this context. *Robinson v Detroit*, 462 Mich 439, 457 n 14; 613 NW2d 307 (2000). That is, for purposes of factual causation, MCL 691.1405 "requires a more direct causal connection than the . . . 'but for' analysis generally employed in cases alleging liability based on negligent conduct[.]" *Curtis v City of Flint*, 253 Mich App 555, 560; 655 NW2d 791 (2002). Once factual causation is established, the legal causation inquiry "requires examining the foreseeability of the consequences and whether the defendant should be held legally responsible for those consequences." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 157; 871 NW2d 530 (2015). When considering summary disposition on the issue of causation, a question of fact exists when the evidence supports "a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support[.]" *Patrick v Turkelson*, 322 Mich App 595, 617; 913 NW2d 369 (2018) (quotation marks and citation omitted).

SMART implies it cannot be liable for plaintiff's injuries because Webster's negligence caused the accident. This argument lacks merit because, "[i]t is not uncommon that more than one proximate cause contributes to an injury." *Ray*, 501 Mich at 65. In other words, "it is well-established that the proper standard for proximate causation in a negligence action is that the negligence must be 'a proximate cause' not 'the proximate cause.' " *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 497; 791 NW2d 853 (2010).[3] When there is more than one proximate cause for a bodily injury in a tort case, "each tortfeasor only pays the portion of the total damages award that reflects that tortfeasor's percentage of fault." *Estate of Goodwin v Northwest Mich Fair Ass'n*, 325 Mich App 129, 139; 923 NW2d 894 (2018) (quotation marks and citation omitted). Generally, the decision regarding apportioning fault belongs to the jury. *Id*., quoting MCL 600.2957(1) (" 'In an action based on tort or another legal theory seeking damages for personal injury . . . the liability of each person shall be allocated under this section by the trier of fact and . . . in direct proportion to the person's percentage of fault.' ").

Plaintiff presented evidence supporting a legal presumption of negligence by Pressley under MCL 257.402(a). Moreover, plaintiff has cited deposition testimony, affidavits, and video evidence allowing

---

[3] An exception is the employee provision of the GTLA, which requires a showing that the defendant's gross negligence was "the proximate cause" of the plaintiff's injuries, MCL 691.1407(2), meaning "the one most immediate, efficient, and direct cause preceding an injury." *Robinson*, 462 Mich at 458-459. But this case involves the motor-vehicle exception for liability against a governmental agency, MCL 691.1405, not the governmental employee provision, MCL 691.1407(2), and thus liability may attach to more than one proximate cause.

for an inference Pressley's negligence was a cause in fact and proximate cause of the accident at issue. As described in more detail above, a jury could find Pressley should have seen Webster's Cruze in the left lane, actually saw Webster use his turn signal, unreasonably decided to honk his horn instead of immediately braking, potentially signaled to Webster he had space to change lanes, and had Pressley chosen otherwise he could have stopped safely. SMART, undoubtedly, has also presented evidence of Webster's negligence. A jury could find, in light of the evidence provided, Webster drove negligently by deciding to quickly switch lanes without first determining he had space to safely do so. However, evidence of Webster's negligence does not warrant summary disposition in favor of SMART because there can be more than one proximate cause in a negligence case. *O'Neal*, 487 Mich at 497. Instead, it will be up to the jury to determine whether Webster and Pressley were negligent, and if so, to apportion fault. *Estate of Goodwin*, 325 Mich App at 139.

SMART's final argument regarding causation relies on an averment from Lieutenant Abbo, which could be read to imply that plaintiff's injuries resulted from the bus's hard braking, not the collision. SMART contends sudden stops are usual incidents of travel against which a common carrier has no duty to protect. SMART is generally correct that "[i]t is well settled that, absent evidence of other negligence pertaining to the operation of a bus, a plaintiff bus passenger may not recover for injuries sustained when the bus suddenly stopped because such stops are normal incidents of travel." *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 437; 824 NW2d 318 (2012). The Michigan Supreme Court has explained that, "where the sudden stopping of the car is the only negligence proven, the passenger receiving injuries from the sudden stopping of the car cannot recover." *Russ v Detroit*, 333 Mich 505, 508; 53 NW2d 353 (1952). To clarify, the Court noted such cases are different from those "where other negligence of the driver of the car additional to the mere sudden stopping of the car" existed. *Id*.

SMART's argument in this regard suffers from two issues. First, to be successful, SMART would need us to determine there was no question of fact whether plaintiff's injuries were factually and proximately caused by Pressley hitting the brakes or colliding with Webster's Cruze. The record does not support such a conclusion. The video shows the two events happened within a matter of one or two seconds. To the extent it would even be possible to separate the events, there still existed a question of fact regarding whether one or both actually caused the injuries. Notably, Lieutenant Abbo was not an expert on causation of bodily injuries, and SMART did not present an affidavit from any expert purporting to be such. Further, plaintiff testified she flew forward at first, but then slid backward afterward. A reasonable jury could conclude plaintiff's movement forward resulted in her injuries and was the consequence of Pressley's sudden slamming of the brakes and then the collision caused the movement backward. See *Robinson*, 462 Mich at 456. Thus, once again, SMART has identified a question of fact, not a reason it should have been granted summary disposition. *Seldon*, 297 Mich App at 437.

The second issue with SMART's argument is it ignores the pertinent language in our cases establishing the rule regarding usual incidents of travel. As identified above, the rule only applies when there is no evidence of negligence other than the sudden stopping. *Id*. For the reasons discussed above, there was evidence of negligence on behalf of Pressley while driving the SMART bus.

Importantly, the facts of this case are significantly different from the circumstances in *Seldon*. In that case, the bus driver suddenly stopped when a traffic light turned yellow while driving the speed limit. *Id*. Because the bus driver was not negligent by failing to anticipate the traffic light changing, the plaintiff in *Seldon* could not rely on the sudden stopping of the bus for a negligence claim. *Id*. Here, unlike in *Seldon*, there was evidence of negligent driving by Pressley—after seeing Webster's turn signal, Pressley

could have safely stopped the bus if he had begun braking immediately. Thus, like the other arguments presented here, SMART's reliance on this being a usual incident of travel did not warrant summary disposition in SMART's favor. *Id.*

In sum, because there were genuine issues of material fact regarding whether Pressley negligently operated the SMART bus, the trial court properly denied SMART's motion for summary disposition.

Affirmed. Plaintiff, as the prevailing party, may tax costs. MCR 7.219(A).


/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett

-11-